STATE of Maine

v.

Alan R. CARON a/k/a Allen Caron.

Supreme Judicial Court of Maine.

March 3, 1975.

Donald H. Marden, County Atty., Augusta, for plaintiff.

Alan C. Sherman, Waterville, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD, and DELAHANTY, JJ.

WERNICK, Justice.

Defendant, Alan R. Caron, has appealed from a judgment of the Superior Court (Kennebec County) which terminated his status as a probationer and committed him to the Men's Correctional Center in execution of a sentence previously imposed but execution of which had been suspended when defendant was placed on probation.[1]

On July 19, 1971, several articles—including jewelry, cameras and guns—were taken from the Waterville home of Dennison Bancroft. A week later, sparsely informed by an unnamed informant, the Waterville police obtained a search warrant. Pursuant to it they searched an apartment rented and occupied by defendant's wife and frequently used by defendant.[2] The police seized items disclosed by the search as fitting the general description of the articles taken from the Bancroft home. After the Bancrofts had identified as their property the items found in the apartment, defendant was arrested on a charge of "breaking and entering with intent to commit larceny." While defendant was being held in custody at the Waterville Police Station, a search was made of his person, and the search disclosed a diamond ring similar to one taken from the Bancroft home and later identified as the property of the Bancrofts.

On October 6, 1971 defendant was indicted, accused of "breaking and entering with intent to commit larceny" in violation of 17 M.R.S.A. § 754.

Upon arraignment defendant pleaded not guilty, and on December 23, 1971, defendant went to trial. After the jury had been duly impanelled and sworn but before the prosecutor had begun the presentation of the State's case, defendant moved (in the absence of the jury) for the suppression as evidence of all the articles seized in his wife's apartment and the diamond ring taken by the police from his person. The theory to support the claimed suppression was that: (1) the search warrant was defective because the affidavit upon which it rested inadequately reflected probable cause and, therefore, the articles in the apartment were the products of an illegal search; and (2) with the police deprived of the benefit of the items found in the apartment, probable cause was lacking for a custodial arrest of defendant and, hence, the search of his person at the police station was unlawful and the diamond ring disclosed by such unlawful search was illegally seized.

The presiding Justice granted defendant's motion to suppress and ordered the articles taken from the apartment and the diamond ring suppressed as evidence. Thereupon, the prosecutor moved that the indictment

---

1. In February of 1971 defendant had been found guilty of the crime of "concealing stolen property" in violation of 17 M.R.S.A. § 3551. He was then 19 years of age. He was sentenced to the Men's Correctional Center but execution of sentence was suspended and defendant was placed on probation for two years.

2. The record suggests that defendant and his wife were not living together on a full-time basis.

against defendant be dismissed. The presiding Justice granted the motion and dismissed the indictment, and defendant was discharged.

Later the same day, the State Probation and Parole Board filed a probation-violation report with the Superior Court (Kennebec County) alleging that defendant had "violated the terms and conditions of his probation" in that:

"On July 22, and July 26, 1971, at Waterville, . . . [he] was in possession of stolen property, under circumstances such that he knew it was stolen. On 7–22–71 he was in possession of jewelry, camaras, and a gun; and on 7–26–71 he was in possession of a ring, all the property of Dennison Bancroft which was taken from his home in Waterville, Maine, on July 19, 1971.

On December 28, 1971 a hearing to determine whether defendant's probation should be revoked was held before the same Superior Court Justice who, five days earlier, had suppressed as evidence the articles taken from the apartment of defendant's wife and the diamond ring found on defendant's person—and which the Probation and Parole Board was alleging was the stolen property possessed by defendant with knowledge that it was stolen.

At the hearing defendant moved (anew) that the articles seized at the apartment and the diamond ring discovered on defendant's person be suppressed as evidence for the purposes of the revocation of probation hearing. After extended discussion concerning the constitutional protections available to a defendant at such a hearing, the presiding Justice denied defendant's motion to suppress. The articles taken from the apartment and the diamond ring were subsequently admitted into evidence over defendant's objection.

During the further course of the hearing defendant objected to the admission into evidence of police testimony relating to the Bancrofts' having identified as their property the articles which had been found in the apartment of defendant's wife as well as the diamond ring found on defendant's person. The ground of defendant's objection was that the testimony was offered in "hearsay" form. Despite the "hearsay" nature of the police testimony the presiding Justice ruled it admissible for the purposes of a hearing to revoke probation.

In his appeal defendant claims that the foregoing two rulings of the presiding Justice were error requiring reversal of the judgment revoking his probation and committing him to the Men's Correctional Center.

We deny the appeal.

1.

■ Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), dealing with constitutional due process requirements as operative in a revocation of parole context, and Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), extending the conceptual framework of Morrissey v. Brewer to proceedings for revocation of a probation which, as here, has been granted as an incident of the imposition, and suspension of the execution, of a sentence for guilt of crime, establish that: (1) the instant revocation of probation proceeding was not "a stage of a criminal prosecution" but (2) since it had potential to result in a deprivation of defendant's liberty, the federal constitutional guarantee of "due process of law", conceived to require fundamental governmental fairness, mandates that the proceeding embody

" . . . an *informal hearing* structured to assure that the finding of a . . . violation will be based on verified *facts* and that the exercise of discretion will be informed by an *accurate knowledge of the* . . . [*probation-*

er's] *behavior."* (emphasis supplied) (p. 484 of 408 U.S., p. 2602 of 92 S.Ct.) [3]

Insofar as the instant revocation of probation hearing was not "a stage of a criminal prosecution" and is to be viewed as calculated to achieve in "informal" manner an expeditious determination of whether the probationer's activities were violative of the conditions upon which he was allowed to be free of confinement as well as whether his behavior was such as to move the Court to exercise a discretion to return the probationer to confinement, there is neither constitutional nor sound policy reason to require automatic transposition to the proceeding of the entire body of evidentiary rules conventionally operative in a criminal prosecution.

As to the "hearsay" rule of evidence in particular, although in a criminal prosecution it may in part be embraced within the constitutional guarantee of a "right of confrontation", no such potential constitutional sanction can attach when, as here, the proceeding is not "a stage of a criminal prosecution." Further, the use of "hearsay" evidence is, per se, consistent with constitutional fundamental fairness "due process" guarantees as applicable to a proceeding to revoke a probation granted as an incident of the imposition, and suspension of the execution, of a sentence for guilt of crime (or a proceeding for revocation of parole). Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225 (1963) cert. den. sub. nom., Jamison et al. v. Chappell, Chairman, U. S. Board of Parole et al., 375 U.S. 957, 84 S.Ct. 447, 11 L.Ed. 2d 316 (1963); Arciniega v. Freeman, 439 F.2d 776 (9th Cir. 1971).

In terms of policy, a minor use of hearsay testimony can be consistent with the informality and expedition desirable for the kind of revocation of probation hearing now under scrutiny; therefore, we see no reason to prohibit hearsay evidence in such proceeding to the same extent it is prohibited in a criminal prosecution. We add the caveat, however, that if, in a given context, the hearsay evidence is unreasonably abundant and its substantive reliability highly suspect, a decision founded on it may be subject to vitiation for violation of "due process of law" fairness standards.

Clearly, there was no such abuse here, either in terms of the amount or the substantive reliability of the hearsay testimony. The presiding Justice acted without error in admitting it as evidence.

2.

More complex is the issue raised by defendant's second point of appeal:—whether evidence "suppressed" because obtained in violation of the "search and seizure" protections of the Fourth Amendment to the Constitution of the United States may be admitted in a hearing to revoke a probation granted as an incident of the imposition, and suspension of the execution, of a sentence for guilt of crime.

Rule 41(e) M.R.Crim.P. governs the procedure for the "suppression" of evidence, stating:

"A person aggrieved by an unlawful search and seizure may move . . . to suppress for use as evidence anything so obtained . . . ."

As Rule 1 M.R.Crim.P. elucidates, however, Rule 41(e) M.R.Crim.P.—as the "criminal" rules in general—applies only to "criminal proceedings." Under Morrissey v. Brewer and Gagnon v. Scarpelli, supra,

---

**3.** The decision in Morrissey v. Brewer came after the revocation of probation proceeding here at issue. While not explicitly holding that the Morrissey constitutional requirements as to a hearing, and its nature, should be given full retrospectivity, Gagnon v. Scarpelli applied the Morrissey "hearing" criteria *in*

*that case* which, as here, involved a revocation of probation proceeding occurring prior to the opinion in *Morrissey.* Accordingly, we approach the instant case in terms of the *Morrissey* criteria as to the "hearing" constitutionally required in proceedings for revocation of probation (or parole).

a hearing to revoke a probation granted incident to the imposition, and suspension of the execution, of a sentence for guilt of crime is not "a stage of a criminal prosecution" within the meaning of the Constitution of the United States. Guided by this analogy, we now decide that such a hearing is not a "criminal proceeding" as to which Rule 41(e) M.R.Crim.P. has applicability.[4] The presiding Justice was, therefore correct in his conclusions that: (1) his suppression ruling for the purposes of the prosecution of defendant for the crime of "breaking and entering with intent to commit larceny" was without carry-over effect to the revocation of probation hearing; and (2) under Rule 41(e) M.R.Crim.P. the procedure of a motion to suppress was not available for separate and independent use in defendant's revocation of probation hearing.

■ That "suppression" procedures and benefits as afforded by Rule 41(e) M.R. Crim.R. were not available in the instant revocation of probation hearing is, however, not ultimately dispositive. The further question remains whether the "evidence-exclusionary" rule, as an independently operative remedy for violations of the Fourth Amendment to the Constitution of the United States made binding on the States by Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), has applicability to a hearing for revocation of a probation granted incident to the imposition, and suspension of the execution, of a sentence for guilt of crime (or for revocation of parole).

The Courts, federal and state, which have considered the question have, with virtual unanimity, answered it in the negative. United States v. Hill, 447 F.2d 817 (7th Cir. 1971); United States ex rel. Sperling v. Fitzpatrick, 426 F.2d 1161 (2d Cir. 1970); United States v. Allen, 349 F.Supp. 749 (N.D.Cal.1972); United States ex rel. Lombardino v. Heyd, 318 F.Supp. 648 (E. D.La.1970), affd., 438 F.2d 1027 (5th Cir. 1971); People v. Atencio, Colo., 525 P.2d 461 (1974); People v. Dowery, 20 Ill.App. 3d 738, 312 N.E.2d 682 (1974); In re Martinez, 1 Cal.3d 641, 83 Cal.Rptr. 382, 463 P.2d 734 (1970), cert. den. sub nom., Martinez v. Craven, 400 U.S. 851, 91 S.Ct. 71, 27 L.Ed.2d 88 (1970).

The rationale of the decisions is that since the Federal Fourth Amendment "evidence-exclusionary" rule is operative in any event in all "criminal prosecutions", the additional furtherance of its policy objectives achieved by extending the rule to hearings for revocation of probation (or parole) is insufficient to justify the concomitant impairment of the proper functioning of the probation-parole system.[5]

We agree.[6]

---

4. Rule 32(f) M.R.Crim.P.—relative to the general subject-matter, "Sentence and Judgment", addressed by Rule 32—deals with particular aspects of procedure for "revocation of probation." By itself this fails to warrant a conclusion that a proceeding for the revocation of a probation granted in connection with the suspension of the execution of a sentence actually imposed is itself a "criminal proceeding" to which all the criminal rules, as they may have relevance, are applicable.

5. Illustrative of the point is the language of United States ex rel. Sperling v. Fitzpatrick, supra:
  "A . . . [probation] revocation proceeding is not an adversarial proceeding. . . . [It] is concerned not only with protecting society, but also, and most importantly, with rehabilitating and restoring

to useful lives those placed in the custody of the [Probation and] Parole Board. To apply the exclusionary rule to . . . [probation] revocation proceedings would tend to obstruct the . . . [probation] system in accomplishing its remedial purposes.
  "There is no need for double application of the exclusionary rule, using it first . . . in preventing criminal prosecution of the . . . [probationer] and a second time at a . . . [probation] revocation hearing. The deterrent purpose of the exclusionary rule is adequately served by the exclusion of the unlawfully seized evidence in the criminal prosecution." (pp. 1163, 1164 of 426 F.2d.)

6. Simultaneously, we have in mind the warning of Chief Judge Lumbard in his concur-

The presiding Justice acted without error in allowing into evidence at defendant's revocation of probation hearing the articles seized at the apartment of defendant's wife and the diamond ring taken from defendant's person.

The entry is:

Appeal denied.

Five Justices concurring.

DUFRESNE, C. J., dissents.

DUFRESNE, Chief Justice (dissenting).

This is an appeal from an order revoking probation which resulted in activating a previously suspended sentence and in turn caused the defendant's commitment to the Men's Correctional Center. At the hearing on the charge of violation of probation under 34 M.R.S.A., § 1633, the Court below received in support thereof over the defendant's objection the same evidence which, five days earlier, it had suppressed in connection with the trial of Caron for the crime of breaking and entering with intent to commit larceny under 17 M. R.S.A., § 754. The previous suppression was on the ground the evidence was obtained through an unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution and Article I, Section 5 of the Constitution of Maine.[1]

The present issue is whether the Court below was in error in refusing to apply the exclusionary rule in a proceeding to terminate one's probation for alleged violation of its conditions, where the only evidence to support the violation was the fruit of an unreasonable and unconstitutional search and seizure. Such tainted evidence, on objection, should have been excluded in meaningful protection of the probationer's constitutional right of privacy and the defendant's appeal should be sustained.

Initially, I take notice that the reference constitutionally unreasonable search and seizure did not arise out of, and in the course of, the execution of any supervisory duty pursuant to 34 M.R.S.A., § 1631 by a probation-parole officer designated to supervise the probationer-defendant by the Director of Probation and Parole under 34 M.R.S.A., § 1632, but, rather, was carried out by police officers of the City of Waterville competitively "ferreting out crime." There is no need to consider if a probation-parole officer may constitutionally search a probationer's person, his effects, and his home without first obtaining a search warrant, and, if so, under what circumstances such a search would be reasonable.[2]

---

ring opinion in United States ex rel. Sperling v. Fitzpatrick, supra:

"The time may come when the balance will shift. Proof of widespread police harassment of . . . [probationers] would cause such a shift since the exclusionary rule is a deterrent which should be used when the need for deterrence is clearly shown." (p. 1166 of 426 F.2d.)

1. The case had opened to the jury. The motion to suppress was then heard and evidence taken out in the absence of the jury. When the Court suppressed the evidence, the State moved to dismiss the indictment. The defendant expressly stated that he had no objection to the dismissal. Thereupon, the indictment was dismissed and the defendant dicharged without day. Whether under the circumstances of the instant case the doctrines of double jeopardy and collateral estoppel would be available in probation violation proceedings need not be decided, since the issue was not raised affirmatively. See, however, People v. Grayson, Opinion September 17, 1974, 58 Ill. 2d 260, 319 N.E.2d 43 (rehearing denied November 26, 1974).

2. In the case of State v. Simms, 1974, 10 Wash.App. 75, 516 P.2d 1088, the Washington Court held that, even though a warrantless search of a parolee's residence may be conducted upon something less than traditional probable cause, nevertheless, before a parole officer may forcibly enter the residence of a parolee without a warrant, he must at least have a well founded suspicion based on personal observation or on information carrying some indicia of reliability that a parole violation has occurred.

Also, this is not a case in which the privilege of probation was granted on the express condition that the defendant submit at any time to a warrantless search by probation-parole officers or any other police authority. See, People v. Mason, 1971, 5 Cal.3d 759, 97 Cal.Rptr. 302, 488 P.2d 630.

The right of privacy, imbedded in the Fourth Amendment and in our own Maine Constitution, is one of the most valuable rights of the citizens of this Nation and of this State. Weeks v. United States, 1914, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652. The constitutional guaranty of one's personal security, personal liberty and private property against unreasonable searches and seizures is unconditional and for the benefit of everyone. Except for searches and seizures made in compliance with the constitutional provisions of probable cause supported by oath or affirmation, all other searches are in violation of the law of the land.[3]

In State v. Gallant, 1973, Me., 308 A.2d 274, this Court said that a search is prohibited by the Fourth Amendment if there is a violation of one's reasonable and justified expectation of privacy. Surely, in the instant case there can be no question of the constitutional violation of Caron's right of privacy by the Waterville police. The Court below recognized the search as an unreasonable one, but refused to suppress its fruits in a proceeding involving the charge of violation of probation, while it applied the exclusionary rule in a prosecution for the commission of the crime disclosed by the search and seizure.

Such a diametrically inconsistent judicial stance in the use of evidence obtained through a constitutionally unreasonable search and seizure must necessarily reflect the introduction by the judiciary, in the Fourth Amendment provision against invidious invasions of privacy, of an exception, which is, that the persons, houses, papers and possessions of probationers and parolees are excluded from the mandated protection of the constitutional guaranty in proceedings to determine whether they are guilty of violating the conditions of their probation or parole.

.The Fourth Amendment privilege on its face is all embracing. It declares that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, *shall not be violated,* and this without any exception based on race, color, sex, previous servitude, or status as a probationer or parolee. The universality of the Fourth Amendment right in terms of persons protected by it is undisputed. As stated in Agnello v. United States, 1925, 269 U.S. 20, 46 S.Ct. 4, at 6, 70 L.Ed. 145, the protection of the Fourth Amendment extends to all equally—to those justly suspected or accused, as well as to the innocent. Go-Bart Importing Co. v. United States, 1931, 282 U.S. 344, 357, 51 S.Ct. 153, 158, 75 L.Ed. 374, 382; Ker v. California, 1963, 374 U.S. 23, 33, 83 S.Ct. 1623, 1629, 10 L.Ed.2d 726, 737.

The search of a private dwelling without a valid warrant is in itself unreasonable. The fact that a person is a probationer does not deprive him of his constitutional guaranty against unreasonable searches by

3. Amendment IV. Constitution of the United States—Searches and seizures

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Article I, § 5. Constitution of the State of Maine—Unreasonable searches prohibited

"The people shall be secure in their persons, houses, papers and possessions from all unreasonable searches and seizures; and no warrant to search any place, or seize any person or thing, shall issue without a special designation of the place to be searched, and the person or thing to be seized, nor without probable cause—supported by oath or affirmation."

police officers of his home or person and against the ensuing unreasonable seizure of his goods and person. True, his status as a probationer is a factor which may be considered in establishing probable cause to search and seize or for the issuance of a search warrant therefor. See, Martin v. United States, 1950, 4 Cir., 183 F.2d 436, 439, cert. denied, 340 U.S. 904, 71 S.Ct. 280, 95 L.Ed. 654; State v. Gansz, 1974, Fla.App., 297 So.2d 614.

Violation of probation is not a criminal offense in itself. The power to suspend execution of sentence imposed upon one convicted of a criminal offense, to grant probation and subsequently to revoke it after hearing is a statutory matter. See, State v. Allen, 1967, Me., 235 A.2d 529, 530, 531. It is recognized that the statutory proceeding is "sui generis—judicial rather than administrative and by no means inconsequential but not a stage in the criminal proceedings." State v. Russo, 1969, Me., 260 A.2d 140; State v. Oliver, 1968, Me., 247 A.2d 122; Skidgell v. State, 1970, Me., 264 A.2d 8. But see, Mempa v. Rhay, 1967, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336.

Our probation system was first established by Public Laws 1909, c. 263, but that original legislation did not provide for any hearing when the probationer was charged by his probation officer with having violated the conditions of his probation.[4] It is only in 1943 (Public Laws, 1943, c. 3) that termination of probation was conditioned upon "cause being shown," and in 1957 (Public Laws, 1957, c. 387, s. 1—otherwise identified as R.S., c. 27–A, s. 8) that the Court was empowered to revoke probation "after hearing."

I appreciate that the legislative change requiring a hearing in revocation of proba-

tion cases was made by the Legislature after our Court had indicated that in this jurisdiction the common law rule which sanctioned the admissibility of evidence illegally obtained prevailed.

In State v. McCann, 1873, 61 Me. 116, this Court said:

"It is objected that the seizure was illegal, the officer having proceeded to search without any warrant. Suppose it was so, that is no defense for the defendant's violation of law. If the sheriff has violated any law he is responsible for such violation, but that will not constitute any justification or excuse for the defendant."

Again, in State v. Plunkett, 1874, 64 Me. 534, this Court, after citing Commonwealth v. Dana, 1841, Mass., 2 Metcalf 329, at 337, restated its adherence to the common law rule, adding by way of illustration:

"If a complaint is made against one for larceny and a search warrant is granted, and the stolen goods found, the thief is not to be discharged when his guilt is fully established, because the officer in serving the warrant may have exceeded his authority, or the complainant may not have had sufficient reasons for the belief upon which his complaint was based." Id. at pp. 537–538.

Finally, in State v. Schoppe, 1915, 113 Me. 10, 92 A. 867, this Court reiterated the common law rule espoused in *McCann* and *Plunkett*. It justified the admissibility of evidence of intoxicating liquors seized without a warrant in cases of complaints charging the keeping of intoxicating liquors intended for unlawful sale upon a statute which provided:

"Intoxicating liquors kept and deposited in the state intended for unlawful sale

---

4. "And if at any time any such respondent violates the terms of his probation, it shall be the duty of the probation officer to forthwith report the same to the court which finally tried the cause, and the court shall have authority thereupon to decree said probation ended, and either impose the sentence, if the cause has been continued for sentence, or in all other cases order the respondent to forthwith comply with the original sentence, and in all cases whether sentence has not been imposed, the court may forthwith impose sentence."

in the state, and the vessels in which they are contained, are contraband and forfeited to the county in which they are kept at the time when they are seized under this chapter. *And in all cases where an officer may seize intoxicating liquors* or the vessels containing them, *upon a warrant, he may seize the same without a warrant,* and keep them in some safe place for a reasonable time until he can procure such warrant." (Emphasis added).

The *Schoppe* Court, in addition to approving the *McCann* and *Plunkett* rule that evidence of criminal activity is admissible, notwithstanding that such evidence may have been obtained unlawfully by the officers, also endorsed the alternative basis for the admissibility of such evidence, which was, that intoxicating liquors in one's possession for purposes of unlawful sale were by statute contraband property seizable without a warrant, and thus were outside the protection of the constitutional prohibitions against unreasonable searches and seizures.

In *Schoppe,* as in the previous cases which treated the issue in connection with intoxicating liquors, the Court seems to have construed the constitutional prohibition against all unreasonable searches and seizures as a unitary concept of a seizure preceded by a search, and as such did not apply to a statutorily authorized seizure of contraband liquors without a prior search. If such is the intendment of the *Schoppe* ruling, it will not stand present-day constitutional analysis, since it is now generally recognized that the constitutional prohibition applies alike in the case of a seizure without warrant as it does when police activity consists of a warrantless search and seizure.

It is unquestioned that the *Schoppe* view represented the common law rule to the effect that the admissibility of evidence is not affected by the illegality of the means by which it was obtained. See, Olmstead v. United States, 1928, 277 U.S. 438, 467, 48 S.Ct. 564, 569, 72 L.Ed. 944.

However, since Mapp v. Ohio, 1961, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, the common law rule has been nullified respecting the admissibility of evidence obtained as a result of an unreasonable search and seizure, because the Supreme Court of the United States there held that the right of privacy embodied in the federal Fourth Amendment is enforceable against the States. Thus, the *Schoppe* decision is not presently viable in cases of searches and seizures deemed unreasonable under the Fourth-Fourteenth Amendments.

The *Mapp* Court further stated that the right to privacy embodied in the Fourth Amendment is enforceable against any invidious invasion "in the same manner and to like effect" as all other basic rights secured by the Due Process Clause, and that the exclusionary rule is an essential part of both the Fourth and Fourteenth Amendments. It is only if the fruits of an unconstitutional search are made inadmissible as evidence in a court of justice, concluded the *Mapp* Court, that all inducement to evade constitutional precepts will be completely eliminated.

The essence of the constitutional prohibition against unreasonable searches and seizures, effectively implemented by the exclusionary rule, is not merely that "evidence so acquired shall not be used before the court but that it shall not be used at all." Wong Sun v. United States, 1963, 371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L. Ed.2d 441.

Any objection to the exclusionary rule, as pointed out in State v. Hawkins, 1970, Me., 261 A.2d 255

"becomes academic because the supremacy clause of the Constitution of the United States (Article VI) requires obedience by State officials to every change in Fourth Amendment law." Id. at page 258.

Again quoting from *Hawkins,* supra, at page 257:

> "While in the first instance, the legality of a search and seizure must be determined under State law, the State standard can be no lower than the constitutional standards applicable to proceedings in the Federal Courts under Federal prosecutions."

The exclusionary rule has been made applicable in noncriminal proceedings. People v. Moore, 1968, 69 Cal.2d 674, 72 Cal. Rptr. 800, 446 P.2d 800 (commitment for narcotic addiction); One 1958 Plymouth Sedan v. Commonwealth of Pa., 1965, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (civil forfeiture); Camara v. Municipal Court, 1967, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (enforcement of health and safety regulations); In re Marsh, 1968, 40 Ill.2d 53, 237 N.E.2d 529 (juvenile proceedings).

It is true that proceedings to determine violation of probation are not criminal trials; they are distinct from the original prosecution for crime and thus the full panoply of rights due a defendant accused of crime in the conduct of his trial does not apply to probation revocation hearings. Gagnon v. Scarpelli, 1973, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656. See, Morrissey v. Brewer, 1972, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (parole).

Nevertheless, the nature of the interest of the probationer in his continued conditional liberty is as great as, if not greater than, that of the accused on trial for crime. The probationer's potential loss is similar to that of a person accused of crime; indeed, if found in violation, he stands to lose his gainful employment and the normal freedom which all members of society enjoy, that is, to live with his family and associate with his friends. As a matter of fact, his exposure to a life of confinement is greater, since any violation of his probation may, more probably than not, result in his confinement for breach of faith which the Court had previously entertained towards him. Even though the proceeding is non-criminal and sui generis in nature, it is clear that it has some features pertinent to a criminal case. Violation of probation proceedings are prosecuted by the State and they serve to trigger the service or the imposition of a sentence for the commission of a crime. It is an integral procedural part of the sentencing process.

I take notice that the great majority of jurisdictions which have considered the question have opted against the application of the exclusionary rule where evidence to support a violation-of-probation charge was obtained in violation of Fourth Amendment rights. Nevertheless, in my humble opinion the constitutional imperative of the Fourth Amendment and of our own constitutional provision against unreasonable searches and seizures compels the rejection of the rationales upon which courts have justified the non-application of the exclusionary rule.

One of the arguments is that a motion to suppress evidence obtained by an unconstitutional search and seizure does not lie in a revocation-of-probation proceeding, since it is not a criminal trial. I agree that Rule 41(e), M.R.Crim.P., does contemplate the use of the motion to suppress as a procedural tool in anticipation of a criminal trial, since it states:

> "[I]f the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any *criminal proceeding.*" (Emphasis added).

Also, Rule 54, M.R.Crim.P., affirmatively provides that "these rules apply to all criminal proceedings . . . in the Superior Court . . .."

But, where in a proceeding sui generis in character, such as to determine violation of probation, there is need to suppress evidence procured in an unconstitutional invasion of the right of privacy, the Superior

Court in its inherent control over cases within its jurisdiction may fashion the proper relief against unconstitutionally obtained evidence by analogy to the pre-trial procedure provided by Rule 41(e).

Such relief may be justified, in the instant case, either under Rule 57, M.R. Crim.P., which says that "when no procedure is specifically prescribed the court shall proceed in any lawful manner not inconsistent with the Constitution of the State of Maine, these rules, or any applicable statutes," or under Rule 7(b), M.R. Civ.P., which provides that "an application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing . . .," or under Rule 43(e), M.R.Civ.P., which states that "when a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or depositions."

As a matter of fact, the defendant's ability to obtain relief is not confined to the instances expressly covered by Rule 41. The rule to suppress evidence, as termed in Smith v. Katzenbach, 1965, 122 U.S.App. D.C. 113, 351 F.2d 810, "is a crystallization of a principle of equity jurisdiction. That equity jurisdiction persists as to situations not specifically covered by the Rule. Alternatively the same result can be reached by a broad reading of the Rule."

Our Court has given Rule 41 an expanded reach to provide pre-trial relief in relation to the admissibility of confessions and in-court or out-of-court identifications. See, State v. Fernald, 1968, Me., 248 A.2d 754; State v. Barlow, 1974, Me., 320 A.2d 895, 903.

Notwithstanding the sui generis character of revocation-of-probation proceedings, they have been fully integrated in our criminal rules within the concept of "all criminal proceedings" under Rule 1, since our criminal rules do provide expressly certain procedures to be observed in such hearings to protect the probationer against any violation of his due process rights. Rule 32(f), M.R.Crim.P. I would hold that a revocation-of-probation proceeding is within the scope of Rule 41.

The jurisdictions which have refused to apply the exclusionary rule to violation-of-probation proceedings have done so on two grounds, 1) the supplemental deterrent effect on future police conduct that will flow from the exclusion in such proceedings of the fruits of unreasonable searches and seizures is too minimal to warrant its application, and 2) the societal interest at stake outweighs the salutary purposes of the rule. The argument is not persuasive in either aspect.

The exclusionary rule is not solely directed at deterrence of police misconduct, but is at the same time the only method whereby the courts may discharge their duty of support to the express mandate of our Constitutions. As stated by Justice Brennan in his dissent in United States v. Calandra, 1974, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561.

> "The exclusionary rule, if not perfect, accomplished the twin goals of enabling the judiciary to avoid the taint of partnership in official lawlessness and of assuring the people—all potential victims of unlawful government conduct—that the government would not profit from its lawless behavior, thus minimizing the risk of seriously undermining popular trust in government."

The exclusionary rule is "part and parcel of the Fourth Amendment's limitation upon encroachment of individual privacy." Mapp v. Ohio, 1961, 367 U.S. 643, 651, 81 S.Ct. 1684, 1689, 6 L.Ed.2d 1081.

The exclusionary rule must be applied in all proceedings where the State is attempting to use the fruits of an unreasonable search and seizure so as to insure the maintenance of the "imperative of judicial integrity" (Elkins v. United States, 1960, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446, 4 L.

Ed.2d 1669) and thus dissipate any inferential notion that courts themselves do take leave of constitutional prohibitions whenever they deem advisable to do so.

Furthermore, the deterrent effect of the exclusionary rule on official misconduct will be completely lost, if, in the end result, the police obtain the reimprisonment of the probationer in their investigation of suspected criminal activity on his part. That police and probation officers frequently work together in the execution of their respective duties is an undisputed fact. Recidivism is a fact of life known to the police as well as to the probation officer; this in itself would suggest cooperative efforts between these two segments of law enforcement. Under 34 M.R.S.A., § 1551, "law enforcement agencies in the State shall cooperate with the [parole] board in exercising its administration," the parole board being in close relationship with the Director of the Division of Probation and Parole. In such a setting, it is imperative that forthright cooperation between agencies within the constitutional standard of reasonable searches and seizures be promoted and fostered, and that all inducement to subterfuge and evasion be withdrawn.

All of the reasons which gave rise to the creation and application of the exclusionary rule to unreasonable searches and seizures by public officers in criminal prosecutions apply with equal force to revocation-of-probation proceedings. The theory of deterrence and respect for the constitutional prohibitions would be gravely endangered if official activity in violation of Fourth Amendment rights could be used, despite its unavailability in strictly criminal prosecutions, to effect a probationer's equally grievous forfeiture of his conditional freedom.

The violation of the fundamental guarantees of privacy is just as great for the individual when used for the purpose of incarceration for breach of probation as when the object is to secure the apprehension and conviction of criminal offenders. On the other hand, when the police have nothing to lose and something to gain following an invidious intrusion of privacy, to the extent the police activity bears some fruit, be it only to cause the defendant's probation to be terminated and the probationer to be incarcerated for past criminal conduct, it seems impossible to view the end result of the enforcement authorities' operations at less than near complete satisfaction of the goals of the original police action. The partial suspension of the exclusionary rule and of the Fourth Amendment right of privacy in the case of probationers must needs result in widespread police harassment of a large class of citizens whose rehabilitation would seem to depend, so the contention goes, in the judicial non-recognition of constitutional mandates. I cannot subscribe to the application of the "silver platter" doctrine in revocation-of-probation proceedings.

The second rationale advanced against the application of the exclusionary rule in probation-revocation hearings is that the rule would prevent the court from considering relevant and significant evidence, and, in so doing, would undermine the legislatively ordained sentencing process by restricting initial grants of probation and seriously interfering with the rehabilitative purposes of the criminal justice system. Judicial condonation of official lawlessness is conceivably even less acceptable in probation-revocation proceedings than in criminal trials; the rehabilitative goals of the probation system must necessarily be substantially frustrated when a probationer observes that the law enforcement personnel can violate the Constitution with apparent impunity and especially with court sanction.

I realize that the Supreme Court of the United States has denied "cert" in United States ex rel. Lombardino v. Heyd, 1970, E.D.La., 318 F.Supp. 648, cert. denied, 404 U.S. 880, 92 S.Ct. 195, 30 L.Ed.2d 160; In re Martinez, 1970, 1 Cal.3d 641, 83 Cal. Rptr. 382, 463 P.2d 734, cert. denied sub

nom. Martinez v. Craven, 400 U.S. 851, 91 S.Ct. 71, 27 L.Ed.2d 88. Even if we should assume that such indicates a prospective approval when the issue is squarely before the Court, nevertheless, this Court, in an analogous situation, has held (See, State v. Collins, 1972, Me., 297 A.2d 620) that this State is free, in the interpretation of our own constitutional provisions, to adopt a higher standard of compliance than the minimal requirements of the Federal Constitution to reflect a proper assessment of the public policy of this State respecting the intended high priority commitment, which, because of its all embracing tenor, Article I, Section 5 of the Constitution of Maine should receive, to wit, that, in full protection of the security of the people in their persons, houses, papers and possessions, the fruits of all unreasonable searches and seizures shall not be available to government in any proceeding.

To the extent that State v. Schoppe, supra, and the cases which the *Schoppe* Court purported to follow, express a contrary view respecting the reasonableness of searches and seizures within the meaning of Article I, Section 5 of the Constitution of Maine and concerning the applicability of the exclusionary rule to evidence obtained in violation of the State constitutional right of privacy, I would overrule them.

The holding of the Supreme Court in United States v. Calandra, supra, is not inconsistent with my present position. In that case, the majority held that a witness summoned to appear and testify before the grand jury may not refuse to answer questions on the ground they are based on evidence obtained from an unlawful search and seizure. Indeed, since the illegally seized evidence and the fruits thereof could not be used in any future prosecution, Calandra had no standing to invoke the exclusionary rule before the grand jury. The instant defendant, on the other hand, faced incarceration through the use of evidence obtained in violation of his Fourth Amendment rights.

I fully approve the language of the Oklahoma Court in Michaud v. State, 1973, Okl.Cr., 505 P.2d 1399:

"The exclusion of evidence obtained through an unconstitutional search cannot be considered as just another rule of procedure; rather, it is a fundamental, constitutional right. It is significant when the evidence 'was obtained in violation of a constitutional prohibition, not merely a rule of procedure. Moreover, the exclusionary rule with which we are concerned is a part of the constitutional right, not merely a rule of evidence adopted in the exercise of a supervisory power.' Verdugo v. United States, 402 F.2d 599, 610–611 (9th Cir. 1968). Accordingly, the distinction between a criminal trial and a revocation hearing does not abrogate the Fourth Amendment."

See also, Justice Brennan's dissent in United States v. Calandra, supra; Justice Peters' dissent in In re Martinez, supra; Justice Grimes' dissent in Stone v. Shea, 1973, N.H., 304 A.2d 647, and Judge Fairchild's dissent in United States v. Hill, 1971, 7 Cir., 447 F.2d 817.

I would sustain the appeal.