STATE of Maine

v.

**Michael J. MAIER II.**

Supreme Judicial Court of Maine.

Argued May 5, 1980.

Decided Dec. 4, 1980.

Henry N. Berry, III, Dist. Atty., Peter G. Ballou, Deputy Dist. Atty. (orally), Neale Duffett, Law Student Intern, Portland, for plaintiff.

Law Offices of Barry L. Kohler, Stephen W. Moriarty (orally), Brunswick, for appellee.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, GLASSMAN and ROBERTS, JJ.

NICHOLS, Justice.

The Defendant, Michael J. Maier II, was convicted in Superior Court, Cumberland County, on June 26, 1979, of theft, Class B, 17–A M.R.S.A. § 353 (Supp.1980), and sentenced to one year imprisonment. Execution of the sentence was suspended, and the Defendant was placed on probation for two years, on condition that the Defendant refrain from further criminal conduct.

Upon a hearing held December 7, 1979, on a motion for revocation of his probation, the Defendant was found to have committed theft by deception, 17–A M.R.S.A. § 354 (Supp.1980) and an order was entered revoking his probation. The Defendant has seasonably appealed from that final order, revoking the probation, claiming (1) application of an unconstitutional standard of proof, (2) insufficiency of the evidence, and (3) an erroneous evidentiary ruling.

We affirm the judgment.

The evidence warrants the following findings of facts.

Paul Mandrell is part owner of Sound Ideas, a retail music store in Portland. In the fall of 1979, the Defendant spoke with Mandrell at his store about purchasing some sound equipment to be installed at a local club known both as "10 Union Street" and "One Way." The Defendant represented that Henry Willette was an owner of the club, and that Willette would pay for the equipment. In fact, Willette had no business connection either with the club, or with the Defendant. Mandrell advised the Defendant to return later and to speak with John Sorenson, another part owner of Sound Ideas.

The Defendant did return to speak with Sorenson about purchasing sound equipment. Sorenson had not seen the Defendant before and was unaware of his earlier visit to the store. Over the next few days Sorenson inspected the One Way club with the Defendant, put together a package of sound equipment, and at the Defendant's request, delivered the equipment to the Defendant's apartment rather than to the club.

After delivery of the equipment to him, the Defendant several times requested a bill. Sorenson testified that on one such occasion the Defendant stated that he would send the bill to his backers in California for payment, while later the Defendant indicated that his backers were in New York. The Defendant testified that he told Sorenson before delivery that his backers in California would pay.

Within one month of this purchase, the Defendant sold two speakers for half price, and offered to sell the remaining sound equipment for "considerably less" than he was obligated to pay for it.

We now address the three issues raised by the Defendant on this appeal.

## I.

The Defendant challenges the constitutionality of 17–A M.R.S.A. § 1206(5) (Supp. 1980).[1] On this appeal the Defendant recognizes that the probation revocation process is not a stage in criminal proceedings. *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973); *State v. Caron*, Me., 334 A.2d 495, 497 (1975). He argues, nevertheless, that because the consequences of a revocation of probation are indistinguishable from the consequences of a criminal conviction, due process requires that in a revocation proceeding commission of a crime must be established by proof beyond a reasonable doubt.

We disagree.

■ At one time probation was viewed as a privilege which a court had discretion to withdraw when satisfied "that the recipient of its grace [was] unworthy of it." *United States v. Markovich*, 348 F.2d 238, 241 (2d Cir. 1965). The United States Supreme Court, however, has rejected the concept that constitutional rights turn upon the characterization of benefits as "rights" or as "privileges." "Whether any procedural protections are due depends on the extent

to which an individual will be 'condemned to suffer grievous loss.' " *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972), *citing Goldberg v. Kelly*, 397 U.S. 254, 263, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970). A probationer's interest in continued freedom from imprisonment is both "weighty" and within the meaning of the "liberty or property" language of the Fourteenth Amendment of the United States Constitution and of Article I, Section 6–A of the Maine Constitution. *Morrissey v. Brewer, supra* 408 U.S. at 482, 92 S.Ct. at 2600 (parolee's interest–applied to probationer's interest by *Gagnon v. Scarpelli, supra*, 411 U.S. at 782, 93 S.Ct. at 1759); *cf. State v. Sommer*, Me., 388 A.2d 110, 111–12 (1978).

■ Our inquiry does not end here, however, for due process "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer, supra*, at 481, 92 S.Ct. at 2600. The *function* of due process in the area of fact-finding is to minimize the risk of erroneous decisions. The quantum and quality of the process due in a particular situation depends upon the *need* to serve the purpose of minimizing the risk of error. *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 13, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979). To determine that need we must examine the interests involved of both the probationer and the State.

■ The interests involved in probation revocation proceedings differ significantly from those in criminal proceedings, where proof beyond a reasonable doubt is the standard. In the latter, the accused has at stake not only the possible loss of his liberty, but the certainty of stigmatization upon conviction. The State, in order to maintain the respect and confidence of the community in the criminal justice system, has a genuine interest in seeing that every individual has confidence that he will not be

---

1. 17–A M.R.S.A. § 1206(5) (Supp.1980) provides in pertinent part:

    When the alleged violation constitutes a crime for which the person on probation has not been convicted, the court may revoke probation if it finds by a preponderance of the evidence that the person on probation committed the crime.

adjudged guilty of a criminal offense unless the factfinder is convinced of his guilt with utmost certainty. *In re Winship*, 397 U.S. 358, 363–364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). In the revocation proceeding, on the other hand, the probationer risks not the absolute liberty to which every citizen is entitled,[2] but only the conditional liberty properly dependent on observation of special probation restrictions.[3] In placing a criminal on probation, the State assumes the risk that the probationer will commit additional antisocial acts. Where probation fails as a rehabilitative device, as evidenced by the probationer's failure to abide by his probation conditions, the State has an overwhelming interest in being able to imprison the probationer without the burden of a new adversary criminal trial. *Morrissey v. Brewer, supra*, 408 U.S. at 483, 92 S.Ct. at 2601; *Gagnon v. Scarpelli, supra*, 411 U.S. at 785, 93 S.Ct. at 1761.

■ Probation, of course, may not be revoked arbitrarily; the probationer is entitled to be treated with basic fairness. But to require proof beyond a reasonable doubt of a probation violation in a probation revocation hearing would unduly burden the State's ability to terminate a failed attempt at rehabilitation.

Under both the Maine Constitution and the United States Constitution the due process requirement[4] is satisfied in probation revocation proceedings when criminal conduct in violation of probation conditions is proved by a preponderance of the evidence. *See United States v. Rivera*, 614 F.2d 1049, 1050 (5th Cir. 1980) (per curiam); *State v. Rasler*, 216 Kan. 292, 295, 532 P.2d 1077, 1079 (1975).

**2.** *But see State v. Caron, supra,* at 504 (dissenting opinion).

**3.** The purpose of probation is to help individuals reintegrate into society as constructive individuals as soon as they are able. Restrictions aimed at furthering the rehabilitation process by prohibiting conduct deemed dangerous to the restoration of the probationer into normal society, and by providing information to a probation officer which will aid him in advising the probationer, may be placed upon the probation-

II.

We next address the Defendant's contention that the evidence against him was insufficient to warrant revocation.

The motion for revocation of probation asserted that as a result of deception the Defendant obtained control over property of Sound Ideas, Inc., by knowingly creating the false impression in Sorenson that the Defendant was the authorized agent of Willette doing business as "One Way." Both at his trial and upon this appeal, the Defendant contended that the evidence shows at most that Mandrell, not Sorenson, was told that the Defendant was the authorized agent of Willette.

■ We begin by noting that 17–A M.R. S.A. § 1205(2) (Supp.1980) states that a motion for revocation of probation "shall set forth in detail the facts underlying the alleged violation." A copy of this motion is to be furnished to the probationer prior to the court hearing. Such notice serves some of the same purposes as an indictment in a criminal proceeding. It provides the probationer with fair notice of the nature of the alleged grounds for revocation giving him an opportunity to prepare his defense, and preventing prejudicial surprise at the hearing. However, given the informal nature of the proceedings[5] and the overwhelming interest of the State in being able to terminate probation when necessary, the specificity required in an indictment is not necessary in a motion to revoke probation. *Murphy v. State*, Wyo., 592 P.2d 1159, 1162 (1979); *Davila v. State*, Tex.Cr.App., 547 S.W.2d 606, 609 (1977).

■ In order to justify the reversal of a criminal conviction because of a variance between the specifications (there, in a bill

er's liberty. *Morrissey v. Brewer, supra,* 408 U.S. at 478, 92 S.Ct. at 2598; *Gagnon v. Scarpelli, supra,* 411 U.S. at 783, 93 S.Ct. at 1760.

**4.** Maine Constitution, Art. I, Sect. 6–A; U.S. Constitution, Amend. XIV.

**5.** The Rules of Evidence are not fully applicable to probation revocation hearings, M.R.Evid. 1101(b)(3).

of particulars) and the proof, a defendant must demonstrate that the variance was prejudicial. *State v. Wedge*, Me., 322 A.2d 328, 332 (1974).

■ We apply a similar rule here. In the case at bar the motion to revoke probation informed the Defendant what offense was alleged, what property was alleged to have been obtained by deception, whose property it was, and by implication, that the deception involved the arrangements for payment. At the hearing the Defendant did not ask for either a continuance or an adjournment, which he could have done if he had been unfairly surprised. The variance here does not justify reversal of the order below.[6]

■ Turning to the crime forming the basis for the probation revocation,[7] we first note that the findings below are reviewed under the "unless clearly erroneous" or "any credible evidence" rule. *State v. Sommer, supra* at 113. The trial court could have rationally found that (1) when the Defendant purchased the equipment from Sorenson he intentionally created the impression either that he intended to pay for the goods himself, or that he intended to submit the bill to his California backers for payment; (2) whichever impression was created was relied upon by Sorenson in making the sale;[8] (3) the Defendant at the time of the sale did not intend to pay for the equipment, and knew that he had no backers who were willing to pay; and (4) the Defendant intended to deprive Sound Ideas, Inc. of the equipment.

### III.

■ We move on to the challenge the Defendant makes to the exclusion of certain evidence which he proffered at trial.

The Defendant offered to prove that in late September, 1979, he priced equipment at another retail music store. There he stated that his backers would pay for the equipment, though he did not in fact purchase anything. The trial court excluded this evidence as irrelevant, and the Defendant appeals from that ruling.

We need not decide if this evidence should have been admitted, for at most its exclusion is harmless error. The trial court

---

**6.** See *Prellwitz v. Berg*, 578 F.2d 190, 193 (7th Cir. 1978); *Murphy v. State, supra*, at 1162; *Stessney v. State*, Tex.Cr.App., 593 S.W.2d 699, 701–02 (1980); *Davila v. State, supra* at 610.

**7.** 17–A M.R.S.A. § 354 (Supp.1980). Theft by deception:
1. A person is guilty of theft if he obtains or exercises control over property of another as a result of deception and with an intention to deprive him thereof.
2. For purposes of this section, deception occurs when a person intentionally:
   A. Creates or reinforces an impression which is false and which that person does not believe to be true, including false impressions as to . . . intention or other state of mind. Provided, however, that an intention not to perform a promise . . . shall not be inferred from the fact alone that the promise was not performed; . . . .

**8.** The trial court made no express findings of fact.
To prove a violation of 17–A M.R.S.A. § 354 (Supp.1980) there must be proof, *inter alia*, that an accused obtained or exercised control over (1) property of another (2) as a result of deception. "Property of another" by definition does not encompass property possessed by a debtor and in which a creditor has only a security interest. 17–A M.R.S.A. § 352(4) (Supp.1980). "As a result of deception" requires proof of reliance by the victim upon the deception as an essential element of the crime. *Ellis v. State*, Me., 276 A.2d 438, 439 (1971) (decided under predecessor statute, 17 M.R.S.A. § 1601); *accord, United States v. Alston*, 609 F.2d 531, 534 (D.C.Cir.1979) *cert. den.* 445 U.S. 918, 100 S.Ct. 1281, 63 L.Ed.2d 603 (1979); *State v. Finch*, 223 Kan. 398, 400–04, 573 P.2d 1048, 1050–52 (1978).
Thus, statements made by the Defendant to Sorenson *after* delivery of the equipment could not alone support a finding of guilt, since the victim could have relied upon such statements only at a time when the equipment was no longer "property of another." Moreover, the Defendant's statements to *Mandrell* could not alone support a finding of guilt, since Sorenson had no actual knowledge of those statements; hence he could not have relied upon them.
These statements, however, were made close in time to the sale to owners of Sound Ideas, Inc., and concerned the very property which the Defendant obtained by deception. Therefore, they are relevant for discerning the Defendant's state of mind at the time of the sale. *State v. Smith*, 140 Me. 255, 276–77, 37 A.2d 246, 255–56 (1944).

indicated that he did not believe that the Defendant had any backers. The trial court heard the Defendant's offer of proof. We can not say that this evidence, "if admitted, would probably have affected the result or had a controlling influence on a material aspect of the case." *Towle v. Aube*, Me., 310 A.2d 259, 264 (1973). Therefore, if exclusion of this evidence was error, it was harmless.

The entry will be:

Order of revocation of probation affirmed.

All concurring.