MAINE SUPREME JUDICIAL COURT                Reporter of Decisions
Decision:     2020 ME 69
Docket:       Cum-19-338
Submitted
  On Briefs:  April 14, 2020
Decided:      May 14, 2020

Panel:        MEAD, GORMAN, JABAR, HUMPHREY, and CONNORS, JJ.

STATE OF MAINE

v.

SAHAL O. HOURDEH

MEAD, J.

[¶1]  Sahal O. Hourdeh appeals from a judgment of the trial court (Cumberland County, *Warren, J.*) terminating his deferred disposition and imposing sentence following his earlier guilty plea to trafficking in prison contraband (Class C), 17-A M.R.S. § 757(1)(B) (2020).  Hourdeh contends that the court erred in admitting evidence at the termination hearing that had been suppressed in a separate criminal case.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  In January 2018, the State charged Hourdeh by criminal complaint with unlawful trafficking in scheduled drugs (Class B), 17-A M.R.S. § 1103(1-A)(A) (2020) (Count 1), and trafficking in prison contraband (Class C), 17-A M.R.S. § 757(1)(B) (Count 2).  On June 28, 2018, Hourdeh

entered into an agreement with the State, pursuant to which the State dismissed Count 1, Hourdeh pleaded guilty to Count 2, and the court (*J. French, J.*) deferred disposition on Count II for twelve months. *See* 17-A M.R.S. §§ 1901-1904 (2020). The agreement required Hourdeh to, inter alia, "refrain from all criminal conduct and violations of federal and state laws."

[¶3] In November 2018, a grand jury indicted Hourdeh on new charges of unlawful trafficking in scheduled drugs (Class B), 17-A M.R.S. § 1103(1-A)(A), and violation of condition of release (Class E), 15 M.R.S. § 1092(1)(A) (2020). He moved to suppress the evidence resulting from a police officer's search of his pocket, which yielded 7.6 grams of crack cocaine. After hearing, the court (*Fritzsche, J.*) granted the motion and suppressed the evidence on the basis that the search was unconstitutional. In doing so, the court said, "I am not finding any deliberate misconduct, any racial motivation, or any evil motive by the police officer. That's not there whatsoever." As a result of the court's ruling, the State dismissed the charges.

[¶4] In the first case, the State moved to terminate Hourdeh's deferred disposition based on his alleged new criminal conduct. Hourdeh moved the court "to order the continued suppression of all evidence gained as a result of the illegal stop and questioning." The court (*Cashman, J.*) heard the motion and

continued the termination hearing for the parties to brief the "very discrete issue as to whether the State can rely on evidence that was suppressed . . . in moving forward on a motion to terminate the deferred [disposition]." The court subsequently denied Hourdeh's motion, ruling that the exclusionary rule does not apply to a deferred disposition proceeding.

[¶5]   The court (*Warren, J.*) then held a termination hearing on August 6, 2019, at which Hourdeh preserved the issue now on appeal. The court found by a preponderance of the evidence that Hourdeh had violated the deferred disposition agreement and imposed the parties' jointly recommended sentence of 145 days' imprisonment, which Hourdeh had fully served. Hourdeh timely appealed. *See* M.R. App. P. 2B(b)(1).

## II.  DISCUSSION

[¶6]  Hourdeh initially argues that the Maine Rules of Unified Criminal Procedure, including Rule 41A governing motions to suppress evidence, apply to a proceeding to terminate a deferred disposition. The State agrees, as do we. The criminal rules apply "[i]n all criminal proceedings." M.R.U. Crim. P. 1(b)(1). A deferred disposition is part of an ongoing criminal proceeding because "[f]or purposes of a deferred disposition, a person is deemed to have been convicted when the court imposes the sentence." 17-A M.R.S. § 1902(4). Here, when the

4

State introduced the suppressed evidence at the termination hearing, Hourdeh had not yet been sentenced and so he had not yet been convicted of the charge to which he previously pleaded guilty.[1] *See id.* Section 1902(4) is a necessary part of the deferred disposition scheme because one possible result of a deferred disposition is that the State dismisses the criminal charge with prejudice, which must occur before the defendant is convicted and sentenced. *See* 17-A M.R.S. § 1903(1)-(2).

[¶7]  The operative question in this appeal is not whether the criminal rules apply, but rather whether the exclusionary rule barred the State's use of evidence that had been suppressed in a separate case to meet its burden in this case of proving by a preponderance of the evidence that Hourdeh "inexcusably failed to comply with a court-imposed deferment requirement." 17-A M.R.S. § 1903(3); *see State v. Caron*, 334 A.2d 495, 499 (Me. 1975) (stating that after the Law Court determines whether the criminal rules apply to a proceeding, "[t]he further question remains" as to whether the exclusionary rule applies).

---

[1]  In contrast, a probation revocation hearing, which involves a defendant who has already been convicted, "is not a criminal proceeding" to which the Maine Rules of Unified Criminal Procedure apply.  *State v. Johansen*, 2014 ME 132, ¶ 17, 105 A.3d 433; *see* 17-A M.R.S. § 1802(1) (2020) ("A person *who has been convicted of a crime* may be sentenced to a sentencing alternative . . . that includes a period of probation . . . ." (emphasis added)); M.R.U. Crim. P. 1(b).

The trial court answered that question in the negative, a ruling that we review de novo. *See State v. Johansen*, 2014 ME 132, ¶ 11, 105 A.3d 433.

[¶8]  Although we have not decided this issue in the context of a deferred disposition, we have declined to apply the exclusionary rule to a probation revocation proceeding, holding that

> the deterrent purpose of the exclusionary rule, which acts as protection for Fourth Amendment rights, was adequately served by the exclusion of the unlawfully seized evidence in the criminal prosecution.
>
>  . . . The exclusionary rule . . . does not apply to probation revocation proceedings unless the probationer presents proof of widespread police harassment or other proof of a serious due process violation.

*Id.* ¶¶ 17-18 (quotation marks omitted); *see Caron*, 334 A.2d at 499 & nn.5-6.

[¶9]  Here, the trial court made a factual finding in the separate case that there was no "deliberate misconduct, . . . racial motivation, or . . . evil motive by the police officer.  That's not there [in the record] whatsoever."  Accordingly, we are not presented with "proof of widespread police harassment or other proof of a serious due process violation."  *Johansen*, 2014 ME 132, ¶ 18, 105 A.3d 433 (quotation marks omitted).

[¶10] The officer's conduct did, however, result in a serious consequence—the suppression of evidence in the State's separate criminal prosecution and the dismissal of that case. For that reason, as in *Caron*,

> [t]here is no need for double application of the exclusionary rule, using it first in preventing criminal prosecution of the [defendant] and a second time at a . . . revocation hearing. The deterrent purpose of the exclusionary rule is adequately served by the exclusion of the unlawfully seized evidence in the criminal prosecution.

334 A.2d at 499 n.5 (alterations and quotation marks omitted); *see Johansen*, 2014 ME 132, ¶ 17, 105 A.3d 433; *State v. Foisy*, 384 A.2d 42, 44 (Me. 1978) ("We find nothing to justify changing, or departing from, our conclusion in *Caron* that application of an evidence-exclusionary rule in all criminal prosecutions is a sufficient police deterrent . . . ." (quotation marks omitted)).

[¶11] Hourdeh correctly notes that there is a difference between the probation revocation at issue in *Caron* and a deferred disposition termination, *see supra* n.1, but it is not an "extreme difference" as he contends. Although at the termination hearing Hourdeh had not yet been convicted, 17-A M.R.S. § 1902(4), neither was he in the position of a defendant who had simply been accused of a crime. Hourdeh had already entered a guilty plea to a Class C charge of trafficking in prison contraband. Had he successfully completed the deferred disposition agreement, the contract he entered into called for him to

stand convicted of the Class D crime of unlawful possession of a scheduled drug, carrying a stipulated sentence of a $400 fine.[2] *See State v. Palmer*, 2016 ME 120, ¶ 13, 145 A.3d 561 ("A deferred disposition agreement is a contract between the defendant and the State and must be interpreted accordingly."); *Gordon v. Cheskin*, 2013 ME 113, ¶ 19, 82 A.3d 1221 ("Deferred dispositions allow defendants in criminal matters to avoid some of the negative consequences of a criminal conviction. In exchange, however, defendants must openly acknowledge and take responsibility for their conduct.").

[¶12]  Because Hourdeh had admitted guilt and accepted future punishment when the State introduced evidence that had been suppressed in a separate case, his deferred disposition termination proceeding is sufficiently analogous to a probation revocation hearing to make *Caron*'s reasoning applicable. 334 A.2d at 499 & n.5; *see Gordon*, 2013 ME 113, ¶ 19, 82 A.3d 1221 (stating that a defendant's admission of guilt in a deferred disposition case may be considered by a court in a later proceeding, even if the underlying charge is eventually dismissed); *Foisy*, 384 A.2d at 44.

---

[2]  The agreement that Hourdeh signed further provided that "[i]f I am found to have violated any of the conditions of this agreement, my plea of guilty will stand on the Class C charge and I will proceed by way of an open sentence."

[¶13] Our conclusion that the exclusionary rule does not apply in this case is fully supported by United States Supreme Court precedent. That Court has explained that the exclusion of evidence obtained in violation of the Fourth Amendment "is not a personal constitutional right," but rather a judicial doctrine whose "sole purpose . . . is to deter future Fourth Amendment violations." *Davis v. United States*, 564 U.S. 229, 236-37 (2011) (quotation marks omitted); *see Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 362-63 (1998). The Court has therefore

> limited the rule's operation to situations in which this purpose is thought most efficaciously served. Where suppression fails to yield appreciable deterrence, exclusion is clearly unwarranted.
>
> . . . Exclusion exacts a heavy toll on both the judicial system and society at large. It almost always requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence. . . . Our cases hold that society must swallow this bitter pill when necessary, but only as a last resort. For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs.

*Davis*, 564 U.S. at 237 (alteration, citations, and quotation marks omitted); *see also Scott*, 524 U.S. at 363 ("[W]e have repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials."), 368 ("We have never suggested that the exclusionary rule must apply in every circumstance in which it might provide marginal deterrence.").

[¶14]  Relevant here, "the deterrence benefits of exclusion vary with the culpability of the law enforcement conduct at issue."  *Davis*, 564 U.S. at 238 (alteration and quotation marks omitted); *see Herring v. United States*, 555 U.S. 135, 137 (2009) ("Our cases establish that . . . suppression is not an automatic consequence of a Fourth Amendment violation.  Instead, the question turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct.").  Accordingly, "[u]nder [the Court's] exclusionary-rule precedents, [an] acknowledged absence of police culpability dooms [an appellant's] claim [that the rule applies].  Police practices trigger the harsh sanction of exclusion only when they are deliberate enough to yield meaningful deterrence, and culpable enough to be worth the price paid by the justice system."  *Davis*, 564 U.S. at 240 (alteration and quotation marks omitted).

[¶15]  Here, the trial court found that although the officer conducted an unconstitutional search, the search did not result from "any deliberate misconduct . . . or any evil motive."  In that circumstance, suppression beyond the directly related criminal case would not serve to "deter future Fourth Amendment violations" and is therefore "clearly unwarranted."  *Davis*, 564 U.S. at 236-37 (alteration and quotation marks omitted).  As in *Scott*, where the

Court held that the exclusionary rule does not apply in parole revocation hearings, "application of the rule in the criminal trial context already provides significant deterrence of unconstitutional searches," 524 U.S. at 364, and "the remote possibility that the subject is [on a form of conditional release] and that the evidence may be admitted at a . . . revocation proceeding surely has little, if any, effect on the officer's incentives,"[3] *id.* at 367; *see id.* at 368 ("[An] officer will be deterred from violating Fourth Amendment rights by the application of the exclusionary rule to criminal trials.").

[¶16]   Because the "sole purpose" of the exclusionary rule, *Davis*, 564 U.S. at 236, was satisfied by the exclusion of the evidence derived from the unlawful search in the dismissed criminal case, the trial court did not err in ruling that the suppressed evidence could be considered in the deferred disposition termination proceeding.

The entry is:

Judgment affirmed.

---

[3]  The Court noted that "even in [the] context" of criminal trials, application of the exclusionary rule is "significantly limited."  *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 364 n.4 (1998).

Clifford B. Strike, Esq., Strike & Knight, Portland, for appellant Sahal O. Hourdeh

Jonathan Sahrbeck, District Attorney, and Kate E. Marshall, Asst. Dist. Atty., Cumberland County District Attorney's Office, Portland, for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2017-7056
FOR CLERK REFERENCE ONLY