Frederick J. MARTINEAU,
Petitioner-Appellant,

v.

Everett I. PERRIN, Jr., Warden, New Hampshire State Prison,
Respondent-Appellee.

No. 78–1369.

United States Court of Appeals,
First Circuit.

Argued March 14, 1979.

Decided July 12, 1979.

Sarah D. McShea, Boston University Law Student, with whom John Leubsdorf, Associate Professor of Law, Boston, Mass., court-appointed counsel, and Jeremy Bernstein, Boston University Law Student, of Boston, Mass., were on brief, for petitioner-appellant.

Richard B. Michaud, Asst. Atty. Gen., Concord, N. H., with whom Thomas D. Rath, Atty. Gen., Concord, N. H., was on brief, for respondent-appellee.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, PETTINE, District Judge.*

* Of the District of Rhode Island, sitting by designation.

BOWNES, Circuit Judge.

This habeas corpus case focuses on the claim by a state prisoner that his parole was unconstitutionally revoked. Petitioner-appellant, Frederick J. Martineau, initially brought a habeas corpus petition in the New Hampshire Superior Court attacking his parole revocation on due process grounds. After this was denied, he appealed to the New Hampshire Supreme Court which found:

> An examination of the entire record, including the transcripts, numerous exhibits and the parties' briefs, failed to show that the board's actions were arbitrary or capricious or that there was any lack of the requisite statutory process. The guidelines established by the *Morrissey* and *Gagnon* cases were all observed by the superior court, and it follows that the order is
>
> *Petition dismissed.*

*Martineau v. Helgemoe*, 381 A.2d 31, 32 (N.H.1977). The next step was a petition to the United States District Court for the District of New Hampshire, which was denied, the court stating:

> The state court proceedings are supported by the record. The findings against petitioner are presumptively correct. 28 U.S.C. 2254(d). This Court finds no reason for a contrary finding.

We issued a certificate of probable cause and this appeal ensued.

The constitutional issue before us is whether petitioner's parole was revoked in violation of his fourteenth amendment rights to due process of law. Appellant alleges specifically that he was not given adequate notice of charges against him, that one of the findings against him was based on an unconstitutionally vague parole condition, and that he was denied a fair hearing by an impartial tribunal and equal protection of the laws.

In the alternative, petitioner urges that because the state court failed to make fac-

tual findings it did not provide an adequate hearing, thus requiring that the matter be remanded to the district court for an evidentiary hearing.

Petitioner was convicted of first degree murder in 1960 and sentenced to life imprisonment.[1] Thirteen years later, he was conditionally released on parole for the remainder of his life term. On September 5, 1975, a New Hampshire State Parole Officer, Robert Johnson, issued a complaint of Violation of Parole against him. The complaint alleged

> that he, the said Fred J. Martineau, has failed to conduct himself as a good citizen on parole. Said Fred J. Martineau has not been cooperative with his parole officer, Armel Couture, *has kept late hours* and, on the night of March 11–12, 1975, was absent from his *residence overnight* without permission or advising his parole officer concerning his whereabouts, in violation of Rule 12 of his Parole Agreement.
>
> Contrary to warnings from his parole officer, Fred J. Martineau although *legally* married has continued an *intimate relationship* with another woman not his wife and has continued to frequent the Community Club in Manchester for a period of approximately six months commencing on or about March 1, 1975, all in violation of Rule 5 of his Parole Agreement.
>
> It is further complained that the conduct of said Fred J. Martineau on parole, on August 23, 1975, has resulted in his arrest by the Manchester, New Hampshire police on a charge of Attempted Burglary in violation of RSA 635:1 and 629:1, and that said conduct further constitutes a violation of Rule 5 of his Parole Agreement.

(emphasis in original).

At a preliminary hearing, called to determine whether or not probable cause existed to revoke his parole, petitioner, through counsel, moved that the mention of his Au-

---

1. Martineau was originally sentenced to death by hanging, but this was later commuted to life imprisonment.

gust 23, 1975, arrest be dropped from the complaint. The hearing officer, noting that it would be unfair to consider a naked arrest without more,[2] granted the motion to drop this allegation, but, in a four page report, found probable cause to revoke parole.

The New Hampshire Board of Parole conducted a final hearing on the revocation complaint in September of 1976. Petitioner, appearing *pro se*, testified in his own behalf, responded to questions from the Board and cross-examined the complaining parole officers. The Board found that Martineau, by his own admission, had been keeping late hours and had sexual relations with a married woman living apart from her husband. In addition, the Board determined that petitioner had, despite parole officer warnings, continued to patronize an off limits club[3] where he purchased drinks for other parolees, "thus not only associating with them, but encouraging them to violate their own parole conditions." The decision also states: "The Board also took into consideration the fact that Mr. Martineau was arrested, bound over, indicted, and convicted of an attempted burglary charge."

On January 10, 1979, Martineau was paroled to Massachusetts for the remainder of his life sentence without any special parole conditions. We are thus faced at the outset with the need to make a determination as to jurisdiction and mootness. The jurisdictional basis for habeas corpus is found in 28 U.S.C. § 2241(c)(3):

> (c) The writ of habeas corpus shall not extend to a prisoner unless—
>
> . . . . .
>
> (3) He is in custody in violation of the Constitution or laws or treaties of the United States[.]

When petitioner filed his federal habeas corpus petition, he was incarcerated in New Hampshire State Prison as a result of the parole revocation. This satisfies the custody requirement. *Carafas v. LaVallee*, 391 U.S. 234, 238, 88 S.Ct. 1556, 1560, 20 L.Ed.2d 554 (1968): "[O]nce the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on such application." In *Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), Mr. Justice Black, writing for a unanimous Court, examined the history of the "in custody" habeas corpus requirement and concluded that, because "in fact, as well as in theory, the custody and control of the Parole Board involve significant restraints on petitioner's liberty because of his conviction and sentence, which are in addition to those imposed by the State upon the public generally," parole was "custody" within the meaning of the habeas corpus statute. *Id.* at 242 & 243, 83 S.Ct. at 377. *See Hahn v. Burke*, 430 F.2d 100, 102 (7th Cir. 1970), *cert. denied*, 402 U.S. 933, 91 S.Ct. 1522, 28 L.Ed.2d 868 (1971); *Hewitt v. State of North Carolina*, 415 F.2d 1316, 1320 (4th Cir. 1969).

The question of mootness is answered by determining whether there are any "collateral legal consequences" flowing from the parole revocation that may adversely affect the petitioner in the future. The evolution of the "collateral consequences" rule was explored in depth in *Sibron v. New York*, 392 U.S. 40, 50–58, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). The Court traced the development and expansion of the doctrine beginning with *St. Pierre v. United States*, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1126 (1943), through *Fiswick v. United States*, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196 (1946), *United States v. Morgan*, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954), *Pollard v. United States*, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957), *Ginsberg v. New York*, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), and *Carafas v. LaVallee, supra*, 391 U.S. 234, 88 S.Ct. 1556. The Court concluded:

---

2. No probable cause hearing or grand jury proceedings had yet been held.

3. In New Hampshire, bars and cocktail lounges are illegal (unless part of a restaurant), and in many "clubs" alcoholic beverages are regularly sold.

*St. Pierre v. United States, supra,* must be read in light of later cases to mean that a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction.

*Id.* 392 U.S. at 57, 88 S.Ct. at 1900.

The "collateral legal consequences" here are that, under New Hampshire Parole Board policy, a parolee is allowed reparole only once for any given sentence. This means that, if petitioner's present parole is revoked, he will lose his liberty permanently. In addition, parole revocation is part of petitioner's record and might have an adverse effect on any future sentence. These are sufficient "collateral legal consequences" to keep the case viable, and we proceed to the merits.

The procedural due process guarantees to be accorded a parolee facing parole revocation were first articulated in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972):

(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.

4. Exhibit B, a letter from the head of the State Police.

5. The Board's decision states: "1. It was noted that Mr. Martineau was extremely articulate

*Id.* at 489, 92 S.Ct. at 2604.

Petitioner claims that he was not given notice of four claimed violations: (1) having sexual relations with a married woman not his wife; (2) being absent from his residence overnight on at least one occasion; (3) purchasing drinks for other parolees; and (4) the Board's consideration of his attempted burglary conviction.

█ The complaint stated in pertinent part: (1) "Fred J. Martineau although legally married has continued an intimate relationship with another woman not his wife . . ."; and (2) "Fred J. Martineau . . . has kept late hours and, on the night of March 11–12, 1975, was absent from his residence overnight without permission. . . ." In point of fact, it was the woman, not the petitioner, who was legally married at the time; and, although Martineau admitted not sleeping at home on at least one occasion, he has independent convincing proof that that night was not March 11–12, 1975.[4] Petitioner's claim that these errors deprived him of notice is hypertechnical and equates the Parole Board hearing to a criminal prosecution, contrary to the admonitions of *Morrissey.* Technical and non-prejudicial variances between the written notice and the Parole Board's final findings of violations do not offend due process. *United States ex rel. Carson v. Taylor,* 540 F.2d 1156, 1160 n. 3 (2d Cir. 1976). While the complaint may have been carelessly worded, petitioner had actual notice of the substance of the first two charges. His failure to claim surprise or request additional time to prepare a defense further attest to this.[5]

█ The Board's next violation finding that petitioner "purchased drinks for other parolees, thus not only associating with them, but encouraging them to violate their own parole conditions," never specifically

and presented a capable defense." After reading all petitioner's *pro se* pleadings, briefs and memoranda, we must agree.

appeared in the complaint. This violation finding was based on statements made by petitioner at the hearing incident to another charge of which petitioner was given notice: that despite repeated warnings, he continued to patronize an off limits drinking club. It was there that he purchased the drinks for other parolees. *Morrissey* does not render a parole revocation hearing invalid because of failure to notice a violation based on a parolee's admission made at the hearing. In its order of remand, the *Morrissey* Court stated: "If it is determined that petitioner admitted parole violations to the Parole Board, as respondents contend, and if these violations are found to be reasonable grounds for revoking parole under state standards, that would end the matter." *Morrissey v. Brewer, supra,* 408 U.S. at 490, 92 S.Ct. at 2605. In *United States ex rel. Carson v. Taylor, supra,* 540 F.2d at 1160, the Court discussed the question of notice and a parolee's admission:

> We do not intend this decision to be viewed as establishing a rule to the effect that in the absence of prior notice to the parolee the Parole Board may never rely upon a parolee's admission of violations as a basis for revoking parole. A per se ban of that sort would run counter to the teaching of *Morrissey* that "it is important for the board to know not only that some violation was committed but also to know accurately how many and how serious the violations were," *id.* 408 U.S. at 480, 92 S.Ct. at 2599, which was a clear invitation to the Board to inquire into the particulars of the parolee's conduct. Furthermore, such an ironclad rule could prove too impractical, since it would in effect compel the Board, each time an unexpected admission surfaced during the course of a hearing, to adjourn the proceeding to permit the giving of written notice of the violation admitted.

■ Petitioner's final lack of notice claim derives from the Parole Board's acknowledgment that it "took into consideration the fact that Mr. Martineau was arrested, bound over, indicted, and convicted of an attempted burglary charge." Petitioner contends that, because mention of his arrest for attempted burglary had been dropped from the original parole violation complaint at his probable cause hearing, consideration of the conviction at the final revocation hearing violated the *Morrissey* notice requirements. This argument fails. Although consideration of the arrest at a time when Martineau had not yet been arraigned or tried for the attempted burglary would have been unfair (and the officer at the probable cause hearing recognized this), consideration one year later after trial and conviction was entirely proper. The reason for eliminating mention of the arrest from the parole violation complaint had vanished. Petitioner had now had his day in court and had been convicted. This was something the Board was bound to consider.

Moreover, notice that the Board would consider his attempted burglary arrest and conviction could not have helped petitioner. The purpose of giving notice is to allow a party to prepare an adequate defense or explanation. "Obviously a parolee cannot relitigate issues determined against him in order forums, as in the situation when the revocation is based on conviction of another crime." *Morrissey v. Brewer, supra,* 408 U.S. at 490, 92 S.Ct. at 2605.

We conclude, therefore, that the basic notice requirements of *Morrissey* were met.

■ Petitioner next claims that his parole was revoked for violation of an unconstitutionally vague parole condition that he keep reasonable hours. We need not reach the issue of whether, on its face, the term "reasonable hours" is unconstitutionally vague for two reasons. First, the Parole Board did not find that he kept unreasonable hours. It stated specifically: "We find that Mr. Martineau was keeping late hours and was absent from his residence overnight on at least one occasion without permission of his parole officer." Second, any facial vagueness is cured by the directive in Rule 12 of the parole agreement that the parole officer make a specific determination of what is reasonable. Staying out overnight is prima facie unreasonable.

Petitioner follows this claim with the contention that the evidence as developed at the hearing was insufficient to support a finding that he had continued to frequent the off limits club despite warnings by his parole officer. The report of the probable cause hearing contains the following:

> During the hearing, the Parole Officer stated that Fred began to frequent the Community Club in Manchester know as the ZOO. The Community Club has been known to be a hang out for undesirables. Fred, contrary to his Parole Officer's advise [sic], continued to be involved with Mrs. Gable and the Community Club. This was documented during the hearing from verbal testimony of the Parole Officer.

While no record of the revocation hearing was made,[6] the decision states that the Parole Board "heard testimony from Parole Officer Johnson and Assistant Officer Armel Couture." The Board specifically found "that Mr. Martineau, after repeated warnings from his Parole Officer to stay away from an interstitial area, the Community Club of Manchester, continued to go there." It is not unfair to assume that this finding was based on the testimony of one or both of petitioner's parole officers.

Our scope of review is narrow. We cannot overturn the findings or actions of a Parole Board "unless it has acted arbitrarily or capriciously or unless as a matter of law there has been no violation of parole." *Caton v. Smith*, 486 F.2d 733, 735 (7th Cir. 1973); *accord, Prellwitz v. Berg*, 578 F.2d 190, 193 (7th Cir. 1978). The New Hampshire Parole Board provided petitioner with notice, an opportunity to be heard and to confront adverse witnesses, and a written statement of its findings and the evidence on which it relied. It acted neither arbitrarily nor capriciously and met the due process requirements of *Morrissey*.

Petitioner further claims that he was denied equal protection of the laws. He alleges that the then Governor of New Hampshire, Meldrim Thomson, telephoned the head of the Parole Board the day of Martineau's attempted burglary arrest encouraging the Board to revoke parole. Being thus singled out for unfavorable treatment by the Governor, argues petitioner, violates the equal protection clause of the fourteenth amendment. This is, of course, not an equal protection claim, but one that the Parole Board acted arbitrarily and capriciously in succumbing to the influence of the Governor. The only evidence of this is the Board's decision to revoke parole. The record shows that the *Morrissey* due process guidelines were followed. To establish a violation of substantive due process, there must be more than a telephone call to the Chairman of the Parole Board and a result contrary to what petitioner wanted.

Finally, we consider petitioner's alternative position that we remand to the district court for an evidentiary hearing so as to ascertain the material facts underlying his constitutional claims. He argues that, since neither the Superior Court nor the New Hampshire Supreme Court made express findings of fact, he is entitled to an evidentiary hearing in the federal court. Petitioner relies on *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

> Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. In other words a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts.

*Id.* at 312–13, 83 S.Ct. at 757. *Townsend* involved a confession which the accused claimed was induced by "truth serum" administered by a police physician. Despite conflicting evidence, the state court filed no

---

**6.** Neither *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), nor *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), which extended the due process requirements of *Morrissey* to probation revocation, require or suggest that a record be made of the revocation hearing.

opinion, conclusions of law or findings of fact. The district court, in dismissing the petition for writ of habeas corpus, denied petitioner an opportunity to produce testimony or evidence.

 The focus here is not on the state court hearing and decision, but on the Parole Board proceedings. Neither the state court nor the federal court sit as a court of review over a parole board in the traditional sense. The scope of review is limited to a determination of whether the due process requirements of *Morrissey* have been met. This necessarily calls for a conclusion of law. The New Hampshire state courts had available to them the parole violation complaint, the report of the initial probable cause hearing, the decision of the Parole Board, the petition and all exhibits introduced at the hearing. Petitioner explicitly stated at the Superior Court hearing:

> Your Honor, there isn't a lot I have to say in support of the petition. I filed twenty-eight pages with it, and everything I say there I claim is fact; and if they want to present witnesses to rebut anything I have said in there, let them bring the witnesses forward for me to cross-examine. Outside that, my case is there completely, and everything I say in there is fact, no guessing. Mr. McNamara was at the hearing; he can object to anything he thinks I put in there that wasn't a fact that happened at the parole hearing. I could say something else, Your Honor. I think, no matter which side wins this motion, it is going to be appealed to the Supreme Court. And I don't know if I am right in saying this, but you could save us all a lot of time if you just threw it out and let us go to the Supreme Court.

 Everything necessary for a due process review of the Parole Board hearing was before the New Hampshire Superior and Supreme Courts, as it was before the district court and is before us. The kind of evidentiary hearing that petitioner wants would involve a replay of the evidence presented at the revocation hearing. We think that this case clearly falls within the exception to the general rule of *Townsend*

*v. Sain, supra*, requiring an evidentiary hearing in the district court:

> If the state court has decided the merits of the claim but has made no express findings, it may still be possible for the District Court to reconstruct the findings of the state trier of fact, either because his view of the facts is plain from his opinion or because of other indicia.

*Id.* 372 U.S. at 314, 83 S.Ct. at 758.

The state court's view of the facts is plain from its opinion.

*Affirmed.*