**Robert D. INGERSON**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

Aug. 4, 1982.

Harmon, Jones & Sanford, Robert C. Perkins (orally), Camden, for plaintiff.

Charles K. Leadbetter, William Stokes, James A. McKenna, III, Wayne S. Moss (orally), Asst. Attys. Gen., Augusta, for defendant.

Before McKUSICK, C. J., and GODFREY, ROBERTS, CARTER and VIOLETTE, JJ.

VIOLETTE, Justice.

The defendant, Robert Ingerson, was convicted in 1966 by a jury in Superior Court, Cumberland County, of the murder of his wife. (17 M.R.S.A. § 2651). The sentence imposed was life imprisonment at the Maine State Prison at Thomaston. On October 13, 1976 the defendant was released on parole. Some time during the fall of 1980, Ingerson was arrested and charged with rape.[1] As a result of this charge, the Maine State Parole Board conducted a parole revocation hearing in October of 1980. At the conclusion of the hearing, the Parole Board revoked the defendant's parole on a finding, by a preponderance of the evidence, that the defendant had committed the rape, thereby violating the conditions of his parole. In September 1981, the defendant filed a petition for post-conviction review challenging, among other issues, the use at the revocation hearing of the results of a polygraph test administered to the prosecutrix. The petition was denied and the defendant filed a timely notice of appeal to the Law Court. An order granting a certificate of probable cause on the polygraph test results question was then issued by the Law Court. We sustain the appeal and reverse the judgment of the Superior Court.

The sole issue presented for our review is whether the admission as evidence at the parole revocation hearing of the results of a polygraph test violated the defendant's due process rights under the Maine and United States constitutions.[2]

In a landmark case, the United States Supreme Court ruled that probationers and parolees have a protectable interest in their liberty and, consequently, before a state could revoke an individual's probation or

---

1. The defendant was indicted for rape in October 1980 by a Cumberland County grand jury. Following a jury trial in Superior Court, Cumberland County, the defendant was found not guilty.

2. Me.Const. art. I, § 6–A; U.S.Const. amend. XIV, § 1.

parole that individual must be accorded due process. *See Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The *Morrissey* Court concluded that the process due a parolee prior to revocation of his parole is an opportunity for a hearing. Although the *Morrissey* Court left the task of filling in the details to the states, the Court set forth the minimum requirements of due process for revocation proceedings: (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. Inherent in the requirements set forth is the concept that the hearing afforded the parolee be fundamentally fair. We turn then, with these requirements in mind, to an examination of the evidence in question as it was introduced in the parole revocation proceeding in this case.

At the revocation hearing, only two witnesses testified, both called by the state— the prosecutrix who testified to the events surrounding the alleged rape, and; a police officer who testified about an interview he had with the prosecutrix and who read to the Board, over the objection of counsel for Ingerson, the opinion of a polygraph examiner who administered a polygraph test to the prosecutrix. The police officer read to the Board the questions asked, responses given and the opinion of the polygraph examiner as to the truthfulness of the responses—which opinion was that all of the responses were truthful. No testimony was heard from the individual who administered the test. No evidence was introduced on how the test was conducted. Further, no evidence was introduced to establish the scientific reliability of the test.

In the context of a criminal trial, the Law Court has consistently held that evidence of polygraph examination results is inadmissible. *See State v. Hilton*, Me., 431 A.2d 1296 (1981). In an early case, the Law Court set forth the reason for excluding this type of evidence: "the lie detector test . . . has not reached the state of scientific development and accuracy that permits admission of the results in evidence." *State v. Mottram*, 158 Me. 325, 329, 184 A.2d 225, 228 (1962) (citing *State v. Casale*, 150 Me. 310, 110 A.2d 588 (1954)). Recently, we again expressed our concern "with the reliability of the polygraph as an indicator of truthfulness, [citations omitted] and with the dangerous possibility that credibility [of a witness] will thence be evaluated by the device rather than by the trier of fact [citations omitted]." *State v. Ledger*, Me., 444 A.2d 404, 415–16 (1982).

 Although we recognize that a parole revocation proceeding is not a criminal trial, *see State v. Caron*, Me., 334 A.2d 495, 499 (1975), and that the Maine Rules of Evidence are not applicable to this type of proceeding, *see* M.R.Evid. 1101, it is our opinion that the admission of this already inherently unreliable evidence, without any foundation whatsoever, was manifestly unfair and clearly prejudicial to the defendant. This unfairness was compounded in that it deprived the defendant of the opportunity to challenge or fairly attack the opinion of the polygraph examiner. Because the testimony of the prosecutrix as to the commission of the rape was uncorroborated, her credibility was critical to the Board's decision of whether the defendant had committed the offense of rape. We reach the inescapable conclusion that this highly unreliable evidence tended to strongly buttress the credibility of the witness. Accordingly, we conclude that the use of this evidence rendered the parole revocation hearing fundamentally unfair and denied the defendant due process of the law. Under the circumstances revealed by this record, the post-conviction review judge committed error in upholding the admission of

the polygraph evidence in the revocation proceeding before the Parole Board. The entry is:

Judgment of Superior Court denying petition for post-conviction review reversed.

Remanded to the Superior Court with instructions to vacate the order of the Parole Board.

All concurring.