**Robert D. INGERSON**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

Argued Jan. 9, 1985.

Decided May 1, 1985.

Harmon, Jones & Sanford, Robert C. Perkins (orally), Camden, for plaintiff.

James E. Tierney, Atty. Gen., Joseph A. Wannemacher, Asst. Atty. Gen. (orally), Augusta, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, GLASSMAN and SCOLNIK, JJ.

McKUSICK, Chief Justice.

In this case we are called upon to review for a second time the State Parole Board's revocation of Robert Ingerson's parole. Ingerson, who in 1976 had been released on parole from a life sentence, had that parole revoked in 1980, as the result of a finding by the Parole Board that he had committed the crime of rape. In *Ingerson v. State,* 448 A.2d 879 (Me.1982) (*Ingerson I*), we ordered a new Parole Board hearing because of the erroneous admission of polygraph test results at the first hearing. In this review of the second hearing, which again resulted in revocation of his parole, Ingerson contends that the Parole Board committed reversible error in six respects. We reject all six arguments asserted by Ingerson, and reverse the Superior Court's grant of post-conviction relief.

In 1966, Robert Ingerson, convicted of murdering his wife, received the then mandatory life sentence at Maine State Prison. Ten years later, the Parole Board released Ingerson on parole. He remained at liberty until September of 1980, when he was arrested for allegedly failing to comply with a condition of his parole requiring him to obey "all federal, state and municipal laws"; specifically, the Parole Board charged Ingerson with the rape of a sixteen year old girl. The Parole Board held a hearing on October 16, 1980, to determine whether Ingerson had violated a condition of his release. It determined that he had, and revoked his parole. In July of 1981, however, a Superior Court jury acquitted Ingerson of the rape charge. Ingerson thereafter petitioned the Parole Board for a rehearing on the revocation of his parole, but the Board denied his request.

On September 14, 1981, Ingerson filed in the Superior Court (Cumberland County) a petition for post-conviction review, challenging the legality of the October 16, 1980, Parole Board revocation of his parole.

*See* 15 M.R.S.A. § 2122 (Supp.1984–1985) (a post-conviction review proceeding is exclusive method for reviewing parole revocation). The Superior Court denied his petition. When Ingerson sought review of that decision in this court, we granted a certificate of probable cause on the single issue of the admissibility at the Parole Board hearing of a polygraph test administered to the victim of the alleged rape. In *Ingerson I*, 448 A.2d at 880–81, we held that admission of the results of that polygraph test was error, and we remanded the case to the Superior Court with instructions to vacate the order of the Parole Board. Thereafter, the Parole Board held a second hearing on the revocation of Ingerson's parole. The Parole Board again revoked his parole, on the basis of its finding that Ingerson had committed the crime of gross sexual misconduct. Ingerson again petitioned the Superior Court for post-conviction relief from the Parole Board's decision. The Superior Court, in an opinion accepting two of Ingerson's arguments and rejecting his other four, vacated the decision of the Parole Board and remanded the case to the Board for yet another hearing. Both the State and Ingerson have appealed that decision of the Superior Court.

Before us, Ingerson argues that the Superior Court erred in rejecting his contentions that: 1) the Parole Board was not a neutral and detached hearing body when it revoked his parole for a second time; 2) a police detective's testimony containing a hearsay statement should have been excluded at the October 1982 hearing; 3) the Parole Board violated his due process rights by failing to provide him a transcript of the first 25 minutes of that hearing; 4) the Board violated his due process rights by revoking his parole based on activities that resulted in a criminal charge of which he had been acquitted. The State's appeal challenges the Superior Court's acceptance of Ingerson's two other arguments and the resulting order of a new parole revocation hearing. Those two contentions were that the Board had failed to provide Ingerson

with a constitutionally sufficient notice of his alleged parole violation, and that a detective's testimony concerning the veracity of the victim of the alleged rape was so prejudicial as to require a rehearing. We address in turn each of these six issues. We agree with the State's arguments and reject those of Ingerson.

### I. *Alleged Bias of the Parole Board*

██ The United States Supreme Court outlined the due process requirements applicable to parole revocation proceedings in *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972). Those requirements include "a neutral and detached hearing body such as a traditional parole board." Ingerson asserts that the following facts demonstrate that the Maine Parole Board was illegally prejudiced against him at the time of the 1982 parole revocation: 1) the Board had conducted a hearing in 1980 and revoked his parole; 2) the Board, after that first hearing, had placed in its files a memo stating that Ingerson was "very dangerous" and should spend many years in prison before being considered for parole; 3) the Board in August 1981 had refused to reconsider his parole revocation after his acquittal on the rape charge; 4) prior to the 1982 hearing, the Board had received information concerning the traumatic effect the proposed release might have on the alleged victim, communications from the District Attorney concerning Ingerson's violent nature, and an affidavit from an individual purportedly having knowledge that Ingerson's defense to the rape charge was untrue; 5) the Board received legal advice from an attorney who was also advising the Parole Department with regard to its presentation to the Board concerning Ingerson's request for a rehearing after the acquittal on the rape charge; and 6) the Board allowed members of the Parole Department to remain in the hearing room during its 1982 deliberations. Based on our careful review of the entire record, we affirm the Superior Court's rejection of Ingerson's allegation of bias on the part of the Parole Board.

██ Ingerson's first four bases for alleging Parole Board bias relate to the practical reality that the Board must deal with the same prisoners over and over again, and to the fact that to be effective the Board must continually monitor parolees and seek information from others concerning their behavior. The United States Supreme Court's requirement of a neutral and detached hearing body clearly does not preclude a parole board from undertaking such activities. Indeed, *Morrissey v. Brewer* specifically states that "a traditional parole board" typifies an appropriately unbiased body. 408 U.S. at 489, 92 S.Ct. at 2604. Moreover, the cases in other jurisdictions that have found the "neutral and detached" requirement to have been violated have involved situations in which a member of the hearing body had initiated the revocation of parole. *See, e.g., Shepard v. Taylor*, 433 F.Supp. 984 (S.D.N.Y.) *aff'd mem.*, 573 F.2d 1295 (2d Cir.1977); *Newell v. State*, 620 P.2d 680 (Alaska 1980); *see generally State v. Turnbull*, 114 Ariz. 289, 560 P.2d 807 (1977). Nothing of that nature occurred here.

██ In addition, for guidance in determining whether the Parole Board was neutral and detached, we can look to the cases in which attempts have been made to disqualify judges for prejudice or bias. In that line of cases, "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source," and not from the conduct of court business. *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). The Board received the information in regard to the first four factors that Ingerson alleges demonstrate its bias, in the course of discharging its official responsibilities vis-a-vis Ingerson's parole. Moreover, this court has noted on several occasions that a trial judge will not be disqualified from rehearing a case on remand because of the possibility that he would be influenced by evidence he erroneously admitted at the first hearing. *See Barber v. Town of Fairfield*, 486 A.2d 150,

152 (Me.1985); *Town of Eliot v. Burton*, 392 A.2d 56, 58 n. 1 (Me.1978). Even though the members of the Parole Board are not subject to the high standards of professional training and conduct required of judges, we reject, as we do for judges, any *per se* assumption that the Board members will be improperly biased either by information they receive from monitoring a parolee's activities or by previously admitted evidence that the Law Court directs them to disregard on rehearing. Decisionmakers are not automatically disqualified for bias by reason of having previously dealt with the same matter at an earlier hearing or in the course of other official duties. Our review of the record before the Superior Court reveals nothing that would justify a factual finding of disqualifying bias on the part of the members of the Parole Board.

We also find no merit in parolee's arguments that the Board's contact with an attorney representing the Parole Department or other members of the department's staff unfairly prejudiced the decision of the Board. The attorney merely advised the Board to follow its established procedures in considering the request for a rehearing, and to explain adequately the reasons for its action. *See* 5 M.R.S.A. § 9055(2) (Supp.1984–1985). Similarly, the presence of the Parole Department staff during the Board's deliberations without participation in those deliberations, does not demonstrate any bias on the part of members of the Board. The Superior Court did not err in rejecting Ingerson's contention that the Parole Board was not a neutral and detached hearing body.

### II. *Admission of Hearsay Testimony at the Hearing on Parole Revocation*

We find no merit in parolee's argument that the Parole Board erred in admitting the testimony of South Portland Police Detective Guimond that contained hearsay statements made by the victim soon after the alleged rape. The Maine Rules of Evidence do not govern parole revocation hearings. *Ingerson I*, 448 A.2d at 880; M.R. Evid. 1101(b)(3). In *State v. Caron*, 334 A.2d 495, 498 (Me.1975), we specifically stated:

[T]he use of "hearsay" evidence is, per se, consistent with constitutional fundamental fairness "due process" guarantees as applicable to ... a proceeding for revocation of parole.

In terms of policy, a minor use of hearsay testimony can be consistent with the informality and expedition desirable for the kind of revocation ... hearing now under scrutiny; therefore, we see no reason to prohibit hearsay evidence in such proceeding to the same extent it is prohibited in a criminal prosecution. We add the caveat, however, that if, in a given context, the hearsay evidence is unreasonably abundant and its substantive reliability highly suspect, a decision founded on it may be subject to vitiation for violation of "due process of law" fairness standards.

(Citations omitted)

In the hearing before the Parole Board, the hearsay evidence was neither "unreasonably abundant" nor "highly suspect." In addition, the hearsay declarant testified at the parole revocation hearing and the parolee thus had a full opportunity to confront her and to cross-examine her on her statements that had come into the hearing through hearsay testimony. The admission of that minor amount of hearsay testimony at the parole hearing was not reversible error.

### III. *Lack of a Transcript of the Parole Board Hearing*

The Superior Court heard this post-conviction review case on a statement of facts agreed to by the parties. However, both in the Superior Court and before this court parolee has argued that his right to due process has been violated because the transcript of the second hearing on parole revocation does not contain the first 25 minutes of that proceeding. The gap in the transcript apparently resulted from an acciden-

tal malfunctioning of the tape recorder used at the hearing.

■■■■ We cannot find that Ingerson's rights were infringed in any way by the lack of a transcript of a portion of the hearing. Due process does not require that a parole revocation hearing be recorded. *See Martineau v. Perrin,* 601 F.2d 1201, 1207 n. 6 (1st Cir.1979). Furthermore, Ingerson stipulated the facts to be used both in the trial court and on appeal, and he has at no time even suggested that any of the agreed facts would be shown to be erroneous by the missing transcript. Ingerson, who has been represented by the same counsel at all relevant times, has not suggested how unavailability of a portion of the transcript of the 1982 hearing has caused him any prejudice; and no prejudice is apparent from the record before us. The Superior Court correctly ruled that the unavailability of a complete transcript did not require reversal of the Parole Board's decision.

## IV. *Ingerson's Acquittal on the Rape Indictment*

■■■ The Parole Board revoked Ingerson's parole on October 16, 1980. A jury acquitted him of the rape charge on July 16, 1981. On August 31, 1981, the Board denied Petitioner's request for reconsideration based on the acquittal. Petitioner filed his first post-conviction review petition on September 14, 1981, and amended that petition on October 13. Accordingly, Ingerson could have made the argument that the acquittal barred the revocation of his parole in his *first* post-conviction petition. He failed to do so, and he therefore has waived the issue. He is barred from raising that issue on this *second* post-conviction review petition now here on appeal. *See McEachern v. State,* 456 A.2d 886, 889 (Me.1983); 15 M.R.S.A. § 2128(3) (Supp. 1984–1985).

■■■ Moreover, even if we were to reach the merits of Ingerson's belated argument, we would in any event deny his appeal. As a condition of his parole, Ingerson agreed to "comply with all federal, state and municipal laws." In determining if a parolee has broken the law, the Board need find by a mere preponderance of the evidence that the violation occurred; it need not find a parole violation beyond a reasonable doubt. *State v. Maier,* 423 A.2d 235, 239 (Me.1980). Thus, even though a criminal jury entertained a reasonable doubt as to Ingerson's guilt of the crime of rape, the same evidence might well support another factfinder's determination that it was more likely than not that Ingerson had engaged in the prohibited conduct. *Cf. State v. Scott,* 343 A.2d 177, 178 (Me.1975) (difference between proof beyond a reasonable doubt required for criminal conviction and preponderance of evidence necessary to establish insanity defense). *See also Taylor v. Commissioner of Mental Health,* 481 A.2d 139, 145–54 (Me.1984) (consideration of standards of proof on release of acquittee by reason of insanity). The fact that a jury concludes that a certain body of evidence does not satisfy the high standard of proof required for conviction in a criminal case does not bar another factfinding tribunal from concluding that the same evidence *does* satisfy the more relaxed civil standard of proof applied in an administrative proceeding for revocation of parole.[1] *See Standlee v. Rhay,* 557 F.2d 1303, 1307 (9th Cir.1977); Annot., 76 A.L.R.3d 578–82 (1977) and cases cited therein. Ingerson takes nothing on this contention.

## V. *Sufficiency of the Notice of a Parole Violation*

The State on its appeal argues that the Superior Court erred in finding that Ingerson did not receive a constitutionally sufficient notice of the parole violation with which he was charged. In proceedings to revoke his parole, a parolee is entitled to

---

1. For the identical reason, collateral estoppel, applicable to a factual determination in favor of a defendant in successive criminal cases, which were judged on the same standard of proof, *see Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), is not applicable here.

"written notice of the claimed violations of parole." *Morrissey v. Brewer*, 408 U.S. at 489, 92 S.Ct. at 2604. Ingerson was given the following notice:

You are charged with having violated the following condition(s) of parole: Condition # 1. That I will comply with all Federal, State and Municipal Laws. In that on August 23, 1980 you did engage in sexual intercourse with [the prosecutrix] said person not being your spouse and did compel said [prosecutrix] to submit by force and against her will.

Ingerson argued successfully in the court below that while that notice alerted him to a charge of rape, it did not provide him with adequate notice of a charge of gross sexual misconduct, the offense which the Parole Board after the second hearing found he had committed.

■ We disagree. The notice requirement of *Morrissey* is not to be equated with the requirement of a formal charging document in a criminal proceeding. Like the other due process requirements for revocation of parole, it is based primarily on concerns that the administrative proceeding be conducted with basic fairness to the parolee. *See* 408 U.S. at 483–84, 92 S.Ct. at 2601–02. A parolee thus has the right to know what he has allegedly done in violation of the conditions of his parole, in order that he may rebut the charge if it is unfounded. *Morrissey* does not, however, require that the rigorous procedural safeguards of a criminal proceeding be applied to the administrative proceedings for revocation of parole.

[T]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations.... Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions.

*Id.* at 480, 92 S.Ct. at 2599.

Ingerson does not convince us that the notice was basically unfair and therefore constitutionally deficient; he does not and cannot show that the notice operated to surprise him or to prejudice his case before the Parole Board in any way. Clearly, he was neither surprised nor prejudiced by the outcome of the parole revocation proceedings. He received a notice identical to the present one prior to his first parole revocation hearing in 1980. Substantially the same evidence was introduced at that first hearing as was presented during the second parole revocation proceeding in 1982. Ingerson was thus fully aware both of the general nature of his alleged parole violation, and of the evidence that would be used to prove that violation at the 1982 hearing. Since the notice informed Ingerson of the evidence that would be presented against him, and since that evidence was fully sufficient to support a finding of gross sexual misconduct, there could be no unfair surprise in derogation of his due process rights. His argument raising the question whether gross sexual misconduct was technically considered to be a lesser included offense within rape at the time the notice was sent is entirely beside the point. So is his claim of prejudice resulting from failure of the notice to specify the violation of any particular subsection of the gross sexual misconduct statute. As the First Circuit Court of Appeals has observed with direct relevance here,

[p]etitioner's claim that these errors deprived him of notice is hypertechnical and equates the Parole Board hearing to a criminal prosecution, contrary to the admonitions of *Morrissey.* Technical and non-prejudicial variances between the written notice and the Parole Board's final findings of violations do not offend due process.... While the complaint may have been carelessly worded, petitioner had actual notice of the substance of the ... charges. His failure to claim surprise or request additional time to prepare a defense further attest to this.

*Martineau v. Perrin,* 601 F.2d at 1205.

■ The notice given Ingerson of the proceedings to revoke his parole fully satisfied the requirements of due process.

## VI. Admission of the Detective's Opinion as to Alleged Victim's Veracity

Detective Guimond of the South Portland Police Department, while testifying at the 1982 parole revocation hearing, related the rape victim's statement made to him soon after the alleged rape, and stated over objection his opinion that she was telling the truth. Ingerson convinced the Superior Court that the Parole Board erred in admitting that opinion testimony and that, since it might have swayed the Board's decision, the case should be remanded for a new hearing.

We, however, are not persuaded that the Parole Board erred. The Court in *Morrissey*, 408 U.S. at 489, 92 S.Ct. at 2604, stated that "the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." In *Gagnon v. Scarpelli*, 411 U.S. 778, 786–87, 93 S.Ct. 1756, 1761–62, 36 L.Ed.2d 656 (1973), the Court once again noted "the informal nature of [revocation] proceedings and the absence of technical rules of procedure or evidence" therein. As we stated above, since the Maine Rules of Evidence do not apply in a parole revocation proceeding, a certain amount of hearsay is acceptable there. The admissibility of opinion evidence in a parole revocation proceeding is likewise not governed by the usual rules of evidence applicable in a criminal trial. Our analysis begins, rather, with the proposition that the admission of evidence in a parole revocation proceeding must be in accord with the basic demands of due process. The administrative hearing to determine whether a violation of parole has occurred is informal and seeks in a loosely structured way to gather all evidence relevant to that question. The only restrictions imposed on the truth-seeking function are those required by due process, of which the touchstone is fundamental fairness. *Gagnon v. Scarpelli*, 411 U.S. at 790, 93 S.Ct. at 1763.

In *Ingerson I*, 448 A.2d at 880, we held that admission of the results of a polygraph examination at parolee's first revocation hearing was fundamentally unfair and so violated the restrictions imposed by due process. The factors that influenced our decision on that appeal were that no foundation was laid regarding the scientific reliability of the test or the manner in which it was conducted; that the device may tend to usurp the function of the trier of fact in evaluating the credibility of a witness; and that there was no opportunity for cross-examination of the polygraph examiner, whose opinion it was that the victim was telling the truth.

The present situation also involves an opinion, in this case that of the police officer, that the victim told a truthful story. The parallel to *Ingerson I* ends there, however. The basis of Detective Guimond's personal opinion, namely, his interview of the victim, was explored at the 1982 hearing in some depth on both direct and cross-examination. Detective Guimond himself was available on the stand to be cross-examined by Ingerson's counsel regarding his opinion of the victim's veracity. There was no problem that Guimond's testimony at the second hearing might overawe the Parole Board, in the way that the aura of scientific infallibility associated with polygraph tests might have unduly swayed the Board at the first hearing. The Parole Board has a long experience of hearing the testimony of police officers, and was unlikely to accord Detective Guimond's opinion any undue weight based on his position. The difficulties that led us in *Ingerson I* to strike down the admission of the polygraph evidence at the first hearing are thus not before us on the present appeal.

Furthermore, Detective Guimond's opinion is the type of evidence that a Parole Board might properly consider in reaching its conclusion. 5 M.R.S.A. § 9057(2) (1979), governing the evidence admissible in administrative proceedings, provides that "[e]vidence shall be admitted if it is the kind of evidence upon which reason-

able persons are accustomed to rely in the conduct of serious affairs." The opinion of a police detective falls into that category of evidence. While it will not have conclusive probative value, still it is one factor that reasonably could be relied upon in the determination of questions of a serious nature. In sum, no fundamental unfairness resulted to Ingerson from the Parole Board's admission of Detective Guimond's opinion of the victim's truthfulness.

Another, perhaps more illuminating, method of analyzing the admissibility of the detective's opinion is to examine the question by an approach analogous to that used in determining whether an error, if there be one, is harmless. It needs no elaborate analysis to observe that if an error is harmless, then it cannot affect a parolee unfairly. Thus, even if we were to assume for the moment that admission of the detective's opinion was error, there would be no violation of due process if it was in any event harmless error.

■ The test for harmless error in a criminal prosecution is stated in *State v. True*, 438 A.2d 460, 467 (Me.1981), to be whether "the appellate court believes it highly probable that the error did not affect the judgment." We do not today decide whether as strict a standard should apply to administrative adjudications. Suffice it for present purposes to say that no more stringent standard for harmless error is to be applied upon review of parole revocation proceedings than is provided for in *True*. In the present case, we have no doubt that the Parole Board would have reached the same result absent Detective Guimond's opinion evidence. In the first place, the members of the Parole Board are likely to have relied only minimally, if at all, on that opinion: they heard the victim herself testify regarding the alleged rape, and could judge her credibility for themselves. In those circumstances, the detective's opinion evidence would be useful mainly to indicate to the Parole Board members that the victim was as believable immediately following the incident as she was at the hearing some two years later. While that information would be useful to the Board members, it could hardly be critical to their decision.

Furthermore, the record makes clear that the Parole Board would have concluded, even absent his explicit opinion testimony, that Detective Guimond believed the victim's story. Following his interview with the victim, the detective arranged to have her take a polygraph test, sought out and interviewed individuals she claimed had seen Ingerson force her into the car on the day of the alleged rape, and took the case to the district attorney for prosecution. That vigorous pursuit of the case shows that the detective thought that the victim was telling the truth. Ingerson has argued that Detective Guimond would not have required the victim to take a polygraph test had he believed her story initially. But that contention is answered by the fact of record that it is "standard policy" in such cases to administer the test. Use of the polygraph was merely a part of Detective Guimond's continued investigation of the case.

■ We conclude that it was highly probable that the detective's statement of his opinion had no effect on the Board's final decision. Thus, admission of that opinion evidence was in any event harmless, and not in violation of due process. As relevant evidence not interfering with Ingerson's due process rights, it was properly admitted at the parole revocation hearing.

The entry is:

Judgment vacated; remanded for entry of judgment denying post-conviction relief.

All concurring.